William Nicholson Lawton, OSB 143685
nlawton@meyerglitz.com
Meyer Glitzenstein & Eubanks LLP
4115 Wisconsin Avenue, N.W. Suite 210
Washington, DC 20016
Tel: (202) 588-5206 x 107
Fax: (202) 588-5049

William S. Eubanks II, admitted *pro hac vice*
beubanks@meyerglitz.com
Meyer Glitzenstein & Eubanks LLP
2601 S. Lemay Ave., Unit 7-240
Fort Collins, CO 80525
Tel: (970 703-6060
Fax: (202) 588-5049

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GINGER KATHRENS, et al., | Case No. 3:18-cv-01691-MO |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| DAVID BERNHARDT, et al., | |
| Defendants. | |

**INTRODUCTION**

The Bureau of Land Management's ("BLM") temporary cessation—and imminent repetition—of the conduct that Plaintiffs challenged, and that this Court found likely violates the U.S. Constitution and the Administrative Procedure Act, ECF No. 24, does not render this case moot. Defendants have wholly failed to carry their "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 190 (2000), especially because it is now clear that BLM is already planning to once again undertake the very experiment that Plaintiffs challenged here. *See Spay Feasibility and On-Range outcomes Environmental Assessment*, Pl's Ex. 1. Indeed, this case already represents the second time in two years that BLM has violated the U.S. Constitution by depriving Plaintiffs of their First Amendment right of access to observe the BLM's experiments on procedures to sterilize wild mares. *See* Preliminary Injunction Hearing Transcript, ECF No. 21 at 55 (finding that Plaintiff Ginger Kathrens has "a First Amendment right to access here"). Notably, Defendants provide *no assurance whatsoever* that BLM will not repeat its unlawful conduct in the future. And, in fact, BLM has already announced its intention to resuscitate the spay experiments challenged here in the very near future. *See* Pl's Ex. 1. Indeed, BLM's new draft Environmental Assessment ("EA"), which represents a third attempt at experimenting with ovariectomy via colpotomy, raises the same suite of issues alleged in Plaintiffs' Complaint, including an unconstitutional limitation on public observation, the refusal to consider the social acceptability of the proposed action, the refusal to continue the welfare observations the agency proposed in 2018, and the refusal to prepare an

Environmental Impact Statement ("EIS"). Because BLM is repeating essentially the same conduct that Plaintiffs have challenged in this case, Plaintiffs' claims are not moot.[1]

## FACTUAL BACKGROUND

This case marks the second time in two years that BLM has proposed to undertake experiments to sterilize wild mares without any opportunity for public observation that complies with the First Amendment—only to abandon the experiments when its unlawful conduct was challenged in court. In 2016, BLM proposed its first experiments on sterilization of wild mares, *see* Pl's Ex. G to Mtn. for Preliminary Injunction ("PI Motion"), ECF 7-8, and denied the public any ability to observe those experiments, *see* Pl's Ex. H to PI Motion, ECF 7-9. Plaintiffs filed a motion for a preliminary injunction before Judge Simon regarding those 2016 proposed experiments, but, rather than respond to that motion, BLM voluntarily withdrew the experiments. *See* Pl's Ex. 2, *Kathrens v. Jewell*, No. 2:16-cv-01650-SI, ECF No. 16 at 1 ("BLM determined that it would voluntarily vacate the June 24, 2016 Decision Record").

In 2018, BLM announced another set of experiments on the sterilization of wild mares that was substantially similar to the agency's 2016 experiments and that again deprived the public of any meaningful ability to observe those experiments. *See* Decl. of Ginger Kathrens, Pl's Ex. A to PI Motion, ECF No. 7-2, at 6–13. Plaintiffs challenged BLM's restrictions on public observation, as well as the rationale for the experiments, and sought a preliminary injunction, which this Court granted on November 2, 2018. Order of Preliminary Injunction, ECF No. 24. This Court found that Plaintiffs demonstrated a likelihood of successfully

---

[1] Although this case is clearly not moot, BLM's new decision will likely be relevant to the claims in this case. For this reason, resolving the motion to dismiss before BLM issues that final decision would be a waste of judicial resources. Accordingly, Plaintiffs intend to file today a motion to stay the pending motion to dismiss.

establishing that BLM's restrictions "on Plaintiffs' ability to observe the wild mare sterilization procedure at issue in this case violate Plaintiffs' constitutional rights under the First Amendment." *Id.* at 1. This Court also found that Plaintiffs demonstrated a likelihood of successfully showing that "BLM's failure to explain why it was not assessing the social acceptability of its procedures was arbitrary and capricious." *Id.* at 1–2.

After this Court issued a preliminary injunction at the November 2, 2018 hearing, *see* Transcript of Hearing, ECF No. 21 at 58–59, Defendants asked this Court to stay the entry of an order on the preliminary injunction so that BLM could voluntarily "rescind the portion of [its] Decision Record pertaining to the spay [experiments]." ECF No. 17, at 2. BLM further explained that to do so, it first needed to ask the Interior Board of Land Appeals ("IBLA") to remand the Decision Record to BLM. *Id.* BLM then filed a motion with the IBLA explaining that it was requesting that the IBLA remand the Decision Record back to BLM *because* this Court had granted Plaintiffs' motion for a preliminary injunction. *See* BLM's Motion to Vacate and Remand, Pl's Ex. 3 (explaining that "[*a*]*s a result of the court's ruling . . . the BLM has determined that it wishes to rescind the [Decision Record]*" (emphasis added)). Pursuant to that request, the IBLA granted BLM's motion, based on the understanding that BLM "wishes to rescind" the decision, and that "BLM has stated its intention to rescind the decision and has communicated this fact to a Federal court." IBLA Order, ECF No. 36-1, at 2.

Meanwhile, three days after it filed its Motion to Dismiss this case, BLM informed its Resource Advisory Council that the agency is preparing for a *new* set of sterilization experiments—apparently with the *same horses that are at issue in this lawsuit*—and anticipated issuing an Environmental Assessment for those new experiments in June 2019. *See* Southeast Oregon Resource Advisory Council Meeting Agenda, Pl's Ex. 4, at 1 (discussing "Burns Spay

3

Trials"); *see also* Koncel Decl., Pl's Ex. 6, at ¶¶ 3–5. Although a BLM official acknowledged that viewing opportunities and social acceptability had been the basis of the present litigation, he did not provide any assurance that the agency would assess social acceptability or provide viewing opportunities that comport with the First Amendment. *See* Koncel Decl., Pl's Ex. 6, at ¶¶ 3–5. Notably, in its Motion to Dismiss, BLM did not inform the Court of its intent to resuscitate the very experiments that are at issue in this lawsuit.

On May 13, 2019, BLM issued a draft EA, which proposed yet another attempt to undertake experiments using the same procedure for wild mare sterilization. Pl's Ex. 1. Notably, the draft EA does not propose to provide the public with any greater level of observation than the agency provided in 2018—and which this Court already found likely violated Plaintiffs' constitutional rights under the First Amendment. *See* ECF No. 21 at 58–59. Likewise, with regard to the agency's failure to consider the social acceptability of this proposed action— another basis on which this Court granted a preliminary injunction, *see id.*—BLM now explicitly refuses to consider this highly relevant issue in a manner that is as arbitrary and capricious as its last approach. Moreover, with regard to the agency's abandonment of the welfare observations it previously proposed to undertake in partnership with Colorado State University—an issue on which this Court found Plaintiffs had raised serious questions going to the merits, *see id.* at 58— the agency still arbitrarily and capriciously refuses to undertake those welfare observations. Finally, consistent with the allegations in Plaintiffs' Complaint, BLM still refuses to prepare an EIS. In short, BLM's new draft EA strongly resembles the EA that Plaintiffs challenged in this lawsuit.

## ARGUMENT

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice." *Laidlaw*, 528 U.S. at 189; *see also Bell v. City of Boise*, 709 F.3d 890, 898 (9th Cir. 2013) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."). "The standard for determining whether a defendant's voluntary conduct moots a case is '*stringent*: a case might become moot if subsequent events *made it absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Bell*, 709 F.3d at 898 (quoting *Laidlaw*, 528 U.S. at 189 (emphases added)). "The 'heavy burden' lies with the party asserting mootness to demonstrate that, after a voluntary cessation, 'the challenged conduct cannot reasonably be expected to start up again.'" *Id.* (quoting *Laidlaw*, 528 U.S. at 189). "This heavy burden applies to a government entity that voluntarily ceases allegedly illegal conduct." *Id.* at 898–99. Thus, an agency "must show that it is absolutely clear that the allegedly wrongful behavior will not recur if the lawsuit is dismissed." *Rosemere Neighborhood Ass'n v. U.S. Envt'l Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009).[2]

---

[2] Defendants' assertion that Plaintiffs somehow have the burden to demonstrate the Court's subject-matter jurisdiction, Motion to Dismiss ("MTD"), ECF No. 36, at 5, is without merit. Defendants cite cases for this proposition that did not consider the voluntary cessation doctrine. *See In re Dynamic Random Access Memory Antitrust Litig.*, 546 F.3d 981 (9th Cir. 2008); *Tosco Corp. v. Cmtys. For a Better Env't*, 236 F.3d 495 (9th Cir. 2001). Defendants also misleadingly assert that Plaintiffs "must furnish affidavits or other evidence." MTD at 7. However, the full quotation from the case Defendants cite states that "*once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence brought before the court*, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). That situation is not present here. *See Rosemere*, 581 F.3d at 1173 (finding that an agency "impermissibly attempts to shift the burden" by "claiming that [the plaintiff] has not done enough"); *FTC v. Affordable Media, LLC*, 179 F.3d

### A. BLM's Voluntary Cessation of the Challenged Conduct Does Not Render This Case Moot.

BLM has failed to carry its "heavy burden" to demonstrate that this case is moot. *Laidlaw*, 528 U.S. at 189. Indeed, BLM has offered *no assurances whatsoever* that its allegedly wrongful behavior—including the unlawful behavior which this Court granted a preliminary injunction to prevent—could not reasonably be expected to recur. Instead, BLM's sole argument for why the voluntary cessation doctrine does not apply is that "BLM did not unilaterally and voluntarily suspend the September 12 Decision Record" because "the IBLA vacated it entirely." MTD, ECF No. 36, at 10. This contention is so wholly without merit that it verges on frivolity.

#### 1. BLM's Decision to Rescind the Decision at Issue Was Voluntary.

The suggestion that BLM did not *voluntarily* suspend its Decision Record, MTD at 10, flagrantly misrepresents the record. Although the IBLA did vacate the Decision Record, it did so only because BLM asked it to do so, specifically because this Court had granted Plaintiffs' motion for a preliminary injunction. *See* Pl's Ex. 2; ECF No. 36-1, at 2 ("because of the court's ruling [in this case], BLM . . . determined that *it wishes to rescind the [Decision Record]*" (emphasis added)). Thus, the record unequivocally shows that BLM's withdrawal of the challenged mare sterilization experiments was indeed voluntary in every sense of that word—i.e., the IBLA would not have vacated and remanded the matter *but for BLM's request that it do so*.[3] Therefore, there is no merit to BLM's self-serving argument that the rescission of the Decision at issue was not voluntary.

---

1228, 1238 (9th Cir. 1999) (the assertion that the plaintiff "did not offer any admissible evidence that the [defendants] were likely to repeat any wrongful conduct . . . is not sufficient to satisfy the [defendants'] burden" to show mootness).

[3] Indeed, BLM itself recognized as much in similar circumstances in 2016, when the agency—represented by the same counsel that filed the current Motion to Dismiss—joined Plaintiffs in a

Defendants' cited cases do not support dismissal. For example, *Murphy v. Hunt* did not address the voluntary cessation doctrine at all. 455 U.S. 478, 482 (1982). The remaining cases are distinct. Thus, BLM's reliance on *Or. Nat. Res. Council, Incl. v. Grossarth*, 979 F.2d 1377, 1379 (9th Cir. 1992), MTD at 10, is seriously misplaced. In that case, the Court of Appeals held that the Forest Service had not "voluntarily" ceased the timber sale at issue when the agency's decision to prepare an Environmental Impact Statement ("EIS') in compliance with NEPA for any future sales was "*the result of [the plaintiff's] successful administrative appeal*," rather than a response to the plaintiff's litigation. 979 F.2d at 1379 (emphasis added). Here, not only has BLM *not* committed to prepare an EIS in conjunction with any future spay experiments, but, as demonstrated above, BLM clearly manufactured the IBLA rescission in direct response to this Court's ruling on Plaintiffs' motion for a preliminary injunction. Likewise, in *Forest Serv. Emps. For Envtl. Ethics v. U.S. Forest Serv.*, the court found that the challenged timber sale would not recur because the agency offered "convincing" evidence that the sale would no longer be economically viable, 408 F. Supp. 2d 916, 918-19 (N.D. Cal. 2006). Here, however, BLM has offered *no evidence* to suggest that its allegedly unlawful behavior will not occur again in the future—and every reason to believe that it will.

    2.    *BLM Cannot Meet Its Burden to Demonstrate that the Challenged Action is not Likely to Recur.*

Furthermore, BLM cannot meet its "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190 (citation omitted). In fact, BLM has offered no evidence that the challenged behavior

---

notice to this Court explaining that the parties were stipulating to the dismissal of the earlier case in part because "BLM determined that it would *voluntarily* vacate the June 24, 2016 Decision Record." Pl's Ex. 2 (emphasis added).

will not recur—and all available evidence indicates that it will. In analogous circumstances where defendants, including federal agencies, have voluntarily ceased allegedly unlawful practices, courts in this circuit have regularly held that the claims are not moot.

For example, in *Rosemere*, the Court of Appeals held that a plaintiff's claim was not moot where the plaintiff had twice encountered the same pattern of a federal agency acting to cure an alleged legal violation "only after [the plaintiff filed] a lawsuit." 581 F.3d at 1175. The Court of Appeals reasoned that "'litigation history' is probative of the likelihood of future [wrongful conduct]" where the plaintiff "has twice encountered that pattern" of behavior alleged to be unlawful. *Id.* That reasoning is squarely applicable here, where Plaintiffs have filed lawsuits challenging BLM's unconstitutional behavior *twice* in two years, only to have the agency withdraw the unconstitutional act after being challenged in court. As the Court of Appeals stated in *Rosemere*, courts are "intent on ensuring that the government cannot escape the pitfalls of litigation by simply giving in to a plaintiff's individual claim without renouncing the challenged policy, at least where there is a reasonable chance of the dispute arising again between the government and the same plaintiff." *Id.*[4]

Similarly, in *Fikre v. Federal Bureau of Investigation*, the Court of Appeals held that the government's voluntary removal of the plaintiff from a "No Fly List" did not moot the plaintiff's challenge to the plaintiff's placement on that list. 904 F.3d 1033, 1040 (9th Cir. 2018). Rather, the Ninth Circuit held that "a voluntary change in official stance or behavior moots an action only when it is *absolutely clear to the court*, considering the procedural safeguards insulating the

---

[4] BLM's suggestion that the voluntary cessation doctrine "focuses on preventing a *private* defendant from returning to its old ways," MTD at 10 (emphasis added), is without merit. *See Bell*, 709 F.3d at 898–99 ("This heavy burden" of demonstrating that the challenged conduct will not reoccur "applies to a government entity that voluntarily ceases allegedly illegal conduct").

8

new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), *that the activity complained of will not reoccur.*" *Id.* at 1039 (emphases added). Likewise, "a claim is not moot if the government remains practically and legally free to return to its old ways despite abandoning them in the ongoing litigation." *Id.* Therefore, because the government's removal of the plaintiff from the No Fly List was "*untethered to any explanation or change in policy*, much less an abiding change in policy," *id.* at 1040, and "[b]ecause there [we]re neither procedural hurdles to reinstating [the plaintiff] on the No Fly List . . . nor any renouncement by the government of its prerogative and authority to do so, the voluntary cessation doctrine applies," *id.* at 1041 (emphasis added). So too here, BLM's withdrawal of its sterilization experiments leaves the agency practically and legally free to return to its old ways and is devoid of any procedural hurdles to prevent the allegedly unlawful conduct from recurring—or even of any informal assurance that BLM will not repeat the same behavior.[5]

Indeed, not only has BLM failed to offer *any* assurance that it will not repeat its allegedly unlawful behavior, but, as demonstrated above, BLM is *already planning to undertake another set of sterilization experiments on wild mares* and has proposed to repeat essentially the same unlawful behavior that Plaintiffs have already challenged. *See* Pl's Ex. 1. Under this circumstance, the agency utterly fails to carry its "formidable burden of showing that it is

---

[5] The Court of Appeals also expressly rejected the "assertion that no relief is available." *Fikre*, 904 F.3d at 1040, reasoning that that although the government "suggests in its appellate brief" that placing the plaintiff back on the list would be based on "a new and different factual record," the fact that the "government ha[d] not executed a declaration to that effect" indicated that the plaintiff's claim was not moot, reasoning that such a declaration could "constitute additional relief." 904 F.3d at 1040. Here, likewise, BLM has failed to file a declaration regarding the basis on which future sterilization experiments could again be authorized, which could constitute additional relief for Plaintiffs.

absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190.[6]

Even putting this new development aside, BLM cannot satisfy its "heavy burden" on this point. BLM's Motion to Dismiss offers no indication whatsoever that the agency will not undertake a new set of sterilization experiments, nor any assurance that the agency would cure the constitutional and legal violations that this Court already identified. Further, the fact that BLM sought clarification of this Court's preliminary injunction to allow the agency to "develop a *new* action involving ovariectomy via colpotomy procedures, and implement a *new* decision record for that action, without obtaining leave from the Court," ECF No. 25, at 3 (emphases added), is additional evidence that the agency intends to do just that.

Accordingly, the record in this case makes abundantly clear that BLM's voluntary cessation of the conduct that Plaintiffs have challenged has not rendered this case moot.

### B.     BLM's Conduct is Also Capable of Repetition, Yet Evading Review.

The second exception to mootness for a "controversy that is capable of repetition, yet evading review," *Kingdomware Techs., Inc. v. United States*, ___ U.S. ___, 136 S.Ct. 1969, 1976 (2016), also applies here. Indeed, the Court of Appeals for the Tenth Circuit recently concluded that this mootness exception applied in a strongly analogous case concerning wild horses. *American Wild Horse Campaign v. Jewell*, 847 F.3d 1174, 1185–86 (10th Cir. 2016). There,

---

[6] Defendants very likely knew of this plan when it filed its Motion to Dismiss, but did not inform the Court. Only three days after it filed its Motion to Dismiss, BLM informed a local Resource Advisory Council that the agency is preparing for a *new* set of sterilization experiments and that it anticipated issuing an Environmental Assessment for those new experiments—indicating that the agency knew this plan was underway when it filed its Motion to Dismiss. *See* Koncel Decl., Pl's Ex. 5, at ¶¶ 3–5; Southeast Oregon Resource Advisory Council Meeting Agenda, Pl's Ex. 4, at 1 (discussing "Burns Spay Trials"). At minimum, this raises serious questions as to the validity and accuracy of Defendants' representations in their Motion to Dismiss. *See* Fed. R. Civ. P. 11(b).

Plaintiff American Wild Horse Campaign ("AWHC") challenged a roundup that BLM was pursuing under an unlawful interpretation of the Wild Free-Roaming Horses and Burros Act ("WHA"). *Id.* Although BLM had completed the roundup, the agency had also made a subsequent decision to conduct another roundup based on the same unlawful construction of the statute. *Id.* at 1185. Plaintiff AWHC contended that the case was "not only *capable* of repetition but is, in fact, presently being repeated," and the Tenth Circuit agreed that under those circumstances the case was not moot. *Id.* at 1185–86.

The Tenth Circuit reasoned that the capable-of-repetition exception applies "'where (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Id.* at 1185 (quoting *Kingdomware*, 136 S.Ct. at 1976 (alterations in original)). Regarding the first prong, because the Supreme Court had found that "'two years is too short to complete judicial review,'" the Tenth Circuit found that the period of seven months between AWHC's complaint in that case and the district court's ruling was "likewise 'too short to complete judicial review.'" *Id.* at 1185 (quoting *Kingdomware*, 136 S.Ct. at 1976). Here, BLM concedes that "[t]he timeline for implementing a horse spay study is a multi-month process." MTD, ECF No. 36, at 12. Accordingly, under precedent from the Supreme Court establishing that two years is too short to complete judicial review, as well as directly applicable reasoning from the Tenth Circuit, BLM has effectively conceded that this prong of the inquiry indicates that this case is not moot.[7]

---

[7] Additionally, BLM's attempt to claim that "the existence and result of this very lawsuit" shows that "there certainly will be adequate time for judicial review of any future spay study" is disingenuous and inaccurate. MTD, ECF No. 36, at 12. In fact, the very short time period between BLM issuing its decision record and undertaking its experiments forced Plaintiffs to seek a preliminary injunction on a very tight schedule, and forced the Court to hold a hearing at a

Regarding the second prong, the Tenth Circuit reasoned that BLM's announcement of a new roundup that was substantially similar to the one Plaintiff AWHC originally challenged "establishes a reasonable expectation that BLM will engage in similar future" actions. *Jewell*, 847 F.3d at 1185. Here too, BLM's proposal of a sterilization experiment that is substantially similar to the one Plaintiffs have challenged demonstrates "'a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Id.* (quoting *Kingdomware*, 136 S.Ct. at 1976 (alteration in original)). Accordingly, this mootness exception applies as well.

## CONCLUSION

For the foregoing reasons, this case is not moot, and this Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,

*/s/ William N. Lawton*
William N. Lawton
nlawton@meyerglitz.com
Oregon Bar No. 143685
Meyer Glitzenstein & Eubanks LLP
4115 Wisconsin Ave. NW, Suite 210
Washington, DC 20016
(202) 588-5206 (phone) / (202) 588-5409 (fax)

*/s/ William S. Eubanks II*
William S. Eubanks II (*admitted* pro hac vice)
beubanks@meyerglitz.com
D.C. Bar No. 987036
Meyer Glitzenstein & Eubanks LLP
245 Cajetan Street
Fort Collins, CO 80524
(970) 703-6060 (phone) / (202) 588-5409 (fax)

Counsel for Plaintiffs

---

time when it was clear that the Court had an otherwise very full docket. *See* PI Hearing Transcript, ECF No. 21, at 59 ("I have a couple of other matters I have to rapidly take to").

12

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2019, I electronically filed the foregoing Opposition to Defendants' Motion to Dismiss with the Clerk of the Court using the Court's CM/ECF System. Copies will be served upon counsel via the CM/ECF System.

>  */s/ William N. Lawton*
>  William N. Lawton
>  nlawton@meyerglitz.com
>  Oregon Bar No. 143685
>  Meyer Glitzenstein & Eubanks LLP
>  4115 Wisconsin Ave. NW, Suite 210
>  Washington, DC 20016
>  (202) 588-5206 (phone) / (202) 588-5409 (fax)
>
>  Counsel for Plaintiffs