William Nicholson Lawton, OSB 143685
nick@eubankslegal.com
Eubanks & Associates LLC
1509 16th Street NW
Washington, DC 20036
Tel: (202) 556-1243

William S. Eubanks II, admitted *pro hac vice*
bill@eubankslegal.com
Eubanks & Associates LLC
2601 S. Lemay Ave., Unit 7-240
Fort Collins, CO 80525
Tel: (970) 703-6060

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

|  |  |  |
|---|---|---|
| GINGER KATHRENS, et al., | ) | Case No. 3:18-cv-01691-MO |
|  | ) |  |
| Plaintiffs, | ) | **DECLARATION OF** |
|  | ) | **DAVID H. BECKER IN SUPPORT OF** |
| v. | ) | **PLAINTIFFS' APPLICATION FOR AN** |
|  | ) | **AWARD OF COSTS, FEES, AND** |
| DAVID BERNHARDT, et al., | ) | **OTHER EXPENSES** |
|  | ) |  |
| Defendants. | ) |  |

I, David Becker, declare as follows:

1.     I am an attorney admitted to practice law in the State of Oregon and in this Court. I make this declaration based upon my own personal knowledge and if called upon to testify, could and would do so competently.

2.     I make this declaration in support of the application by Ginger Kathrens, The Cloud Foundation, American Wild Horse Campaign, Animal Welfare Institute, and Carol Walker (collectively, "plaintiffs") for an award of costs, fees, and other expenses under the Equal Access to Justice Act ("EAJA"). Plaintiffs are prevailing parties in this case, which claimed that the Bureau of Land Management ("BLM") violated plaintiffs' rights under the First Amendment to the U.S. Constitution, violated the Wild Free-Roaming Horses and Burros Act, and violated the National Environmental Policy Act ("NEPA") in unreasonably limiting the public's right to observe and document experiments that BLM planned to perform to sterilize wild horse mares and in approving those experiments based on an Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI").

3.     I have reviewed the documentation described in paragraphs 22 and 23 below, and it is my opinion that the hours sought by plaintiffs are reasonable and appropriate for the litigation tasks performed during all phases of this case that achieved excellent results for plaintiffs—a preliminary injunction in 2018 prohibiting the BLM Burns District from undertaking cruel sterilization experiments on wild horses in the Warm Springs Herd Management Area, and the agency's apparent withdrawal of its 2019 proposal to conduct sterilization experiments. It is also my opinion that plaintiffs are entitled to recover for all time reasonably spent in this litigation up to and including the time their attorneys are required to spend in litigating this application for costs, fees, and other expenses. It is also my opinion that

the rates sought by plaintiffs' attorneys are reasonable market rates for Portland, Oregon, and

that the Court should award these rates, notwithstanding the statutory cap under EAJA. I spent

21.1 hours, of which I am charging for 20.0 hours, at my normal hourly rate in Portland, Oregon,

of $525 per hour in 2020, for total fees of $10,500.00, in providing legal advice to attorneys for

plaintiffs regarding legal issues pertaining to attorney fee and cost recovery, reviewing

documentation related to the various stages of this case, and preparing this declaration testimony,

as set out in detail in Attachment A, attached.

### GENERAL QUALIFICATIONS

4.      I am an attorney licensed to practice law in Oregon since 2008, and a member in

good standing of the state bar of Oregon. I have previously been a member of the state bars of

New York, New Jersey, and Utah. I was first admitted to practice in New York in 2000. I am

admitted to practice before the United States District Courts for the Southern District of New

York, Eastern District of New York, Western District of New York, New Jersey, Utah, and

Oregon; before the United States Courts of Appeals for the Second Circuit, Fourth Circuit, and

Ninth Circuit; and before the United States Supreme Court.

5.      As described in more detail below, I have extensive expertise and an exclusive

practice specialization in federal environmental litigation, which I have been practicing for 21

years, including the last 15 on behalf of environmental public interest clients. In January 2011, I

opened my own law practice, the Law Office of David H. Becker, LLC, representing and

advising public interest environmental organizations involved in protecting imperiled species and

public lands throughout the Western United States, including the Native Fish Society, Friends of

the Columbia Gorge, Klamath Siskiyou Wildlands Center, Klamath Forest Alliance, Pacific

Rivers Council, Hells Canyon Preservation Council, Basin and Range Watch, Oregon Natural

Desert Association, Oregon Wild, Western Watersheds Project, Wild Fish Conservancy, Center

for Biological Diversity, Southern Utah Wilderness Alliance, WildEarth Guardians, Defenders of

Wildlife, Audubon Society of Portland, and Willamette Riverkeeper. I also have particular

experience in administrative law, federal appellate litigation, and Federal Courts practice by

virtue of the year I served as law clerk to Hon. Richard J. Cardamone of the U.S. Court of

Appeals for the Second Circuit, my five years thereafter working in two leading law firms'

environmental and appellate practices, my 15 years of public interest environmental law practice

with the Pacific Environmental Advocacy Center, Western Resource Advocates, Oregon Natural

Desert Association, and as a solo practitioner, and the three months I served as law clerk to Hon.

Garr M. King of the U.S. District Court for the District of Oregon.

6.      I have gained a reputation as an expert on environmental law issues, presenting on

a panel on livestock grazing litigation at the Oregon State Bar's Agricultural Law Section annual

Continuing Legal Education seminar in May 2016; presenting on a panel at the Fifth Annual

Fisheries and Hatcheries Seminar in Seattle, Washington in September 2014; presenting on two

panels at the annual Public Interest Environmental Law Conference ("PIELC") in Eugene,

Oregon in March 2017, on a panel at the PIELC in March 2016, on a panel at the PIELC in

March 2015, at two panels at the PIELC in March 2013, at two panels at the PIELC in March

2011; co-teaching the Developments in Endangered Species Act Law portion of the Oregon State

Bar Environmental Law Section's Annual Continuing Legal Education program in October

2010; giving a presentation on livestock grazing and water quality at the Northwest Water Law

Symposium in October 2010; and presenting on the impacts of energy development on wildlife

at Lewis & Clark Law School's Animal Law Conference in October 2009 and its Greening the

Grid Conference in June 2009. I have served on the Executive Committee of the Oregon State

Bar's Environmental and Natural Resources Section, including serving as the Section's Secretary and Treasurer.

7.      Prior to opening my solo practice, I was staff attorney at the Oregon Natural Desert Association ("ONDA") from January 2008 through December 2010. Prior to joining ONDA, I was staff attorney at Western Resource Advocates in Salt Lake City, Utah.

8.      Prior to joining Western Resource Advocates, I served as law clerk to Hon. Garr M. King, District Judge of the U.S. District Court for the District of Oregon, from May 2006 to August 2006. During 2005 and 2006, I was associated with the Pacific Environmental Advocacy Center ("PEAC") while pursuing an LL.M. degree.

9.      Over the past 15 years, I have served as lead or co-lead counsel on numerous environmental matters, including nearly two dozen appeals, involving litigation under statutes such as the Endangered Species Act ("ESA"), National Environmental Policy Act ("NEPA"), Freedom of Information Act ("FOIA"), National Forest Management Act ("NFMA") and Federal Lands Policy and Management Act ("FLPMA"). These include: *Stop B2H Coal. v. BLM*, No. 19-1822 (D. Or. filed Nov. 12, 2019); *ONDA v. Hanley*, No. 19-1550 (D. Or. filed Sept. 27, 2019); *S. Utah Wilderness All. v. U.S. Dep't of the Interior* (D.D.C. filed July 24, 2019); *W. Watersheds Proj. v. Bernhardt*, No. 19-750 (D. Or. filed May 13, 2019); *Central Oregon LandWatch v. Jeffries*, No. 17-1091 (D. Or. filed July 13, 2017); *Western Watersheds Project v. U.S. Fish & Wildlife Service*, No. 17-98 (D. Or. filed Jan. 20, 2017); *McGuinness v. U.S. Forest Serv.*, No. 16-2406 (4th Cir. filed Dec. 9, 2016); *Clatsop Residents Against WalMart v. U.S. Army Corps of Engr's*, No. 16-35767 (9th Cir. filed Sept. 23, 2016); *Wild Fish Conservancy v. NMFS*, No. 16-553 (D. Or. filed Mar. 31, 2016); *Basin and Range Watch v. BLM*, No. 16-403 (D. Nev. filed Feb. 26, 2016); *Friends of the Columbia Gorge v. Bonneville Power Admin.*, No. 15-72788 (9th

Cir. filed Sept. 9, 2015); *Oregon Wild v. Cummins*, No. 15-1360 (D. Or. filed July 22, 2015);

*Western Watersheds Project v. U.S. Forest Serv.*, No. 15-218 (D. Idaho filed June 22, 2015):

*Oregon Wild v. U.S Forest Serv.*, No. 15-895 (D. Or. filed May 26, 2015); *Our Money Our*

*Transit v. FTA*, No. 14-35766 (9th Cir. filed Sept. 11, 2014); *Bark v. Northrop*, No. 13-1267-HZ

(D. Or. filed July 25, 2013); *Bundorf v. Jewell*, No. 13-616-MMD-PAL (D. Nev. filed Apr. 10,

2013); *Native Fish Society v. NMFS*, No. 12-431-HA (D. Or. filed Mar. 9, 2012); *Klamath*

*Siskiyou Wildlands Center v. Grantham*, No. 11-1647-MCE-CMK (E.D. Cal. filed June 17,

2011); *Western Watersheds Project v. BLM*, No. 11-53-HDM-VPC (D. Nev. filed Jan. 25, 2011);

*ONDA v. Tidwell*, 716 F. Supp. 2d 982 (D. Or. 2010); *ONDA v. Sabo*, No. 10-1212-CL (D. Or.

filed Oct. 4, 2010); *ONDA v. Suther*, No. 09-862-PK (D. Or. filed July 27, 2009); *ONDA v. BLM*,

No. 08-1271-KI (D. Or. filed Oct. 27, 2008); *ONDA v. Locke*, No. 05-210-KI, 2010 WL 56111

(D. Or. filed Feb. 14, 2005); and *ONDA v. U.S. Forest Serv.*, No. 03-213-PK (D. Or. filed Feb.

18, 2003). I also have served as lead- or co-counsel in the appeals of *ONDA v. Gammon*, No. 07-

35728 (9th Cir. filed Aug. 17, 2007); *ONDA v. BLM*, No. 05-35931 (filed Sept. 9, 2005); *ONDA*

*v. U.S. Forest Serv.*, 550 F.3d 778 (9th Cir. 2008); *ONDA v. Lohn*, No. 07-35700, 2009 WL

123525 (9th Cir. Jan. 12, 2009); *ONDA v. U.S. Forest Serv.*, No. 07-35559, 2008 WL 5233281

(9th Cir. Dec. 16, 2008); *ONDA v. BLM*, No. 11-35143 (9th Cir. filed Feb. 15, 2011); *ONDA v.*

*Or. Cattlemen's Ass'n*, No. 11-35331 (9th Cir. filed Apr. 14, 2011); and *ONDA v. BLM*, No. 11-

35759 (9th Cir. filed Sept. 19, 2012).

   10.  Before obtaining my LL.M. at Lewis & Clark Law School, I was an associate in

the Environment, Land and Resources Department of the Newark, New Jersey office of Latham

& Watkins LLP. My practice involved litigation against the federal government in cases

involving several federal environmental statutes, including the Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA"), the Resource Conservation and Recovery Act ("RCRA"), and the Clean Water Act ("CWA").

11.    Before I worked for Latham & Watkins, I was an associate in the Environmental Practice Group in the New York, New York office of Sidley & Austin for three years. My practice involved litigation and regulatory compliance counseling under several federal environmental statutes, including CERCLA, RCRA, CWA, the Toxic Substances Control Act ("TSCA"), and the Clean Air Act ("CAA").

12.    Prior to working for Sidley & Austin, I served as law clerk to Hon. Richard J. Cardamone, Senior Judge, U.S. Court of Appeals for the Second Circuit in Utica, New York, from August 1999 to August 2000.

13.    I obtained my J.D. degree *summa cum laude* in public law from Cornell Law School in 1999, where I was a Note Editor for the Cornell Law Review, and my LL.M. degree *summa cum laude* in natural resources and environmental law from Lewis & Clark Law School in 2006, where I won the Bernard F. O'Rourke Award for outstanding writing and was named to the Cornelius Honor Society. I also obtained an M.B.A. *with distinction* from the Kellogg School of Management at Northwestern University in 1992. I have authored or co-authored six publications on environmental law, administrative law, and other legal topics, including: *Changing Direction in Administrative Agency Rulemaking: "Reasoned Analysis," the Roadless Rule Repeal, and the 2006 National Park Service Management Policies*, Environs Envtl. L. & Pol'y J. (December 2006); *The Challenges of Dam Removal: The History and Lessons of the Condit Dam and Potential Threats From the 2005 Federal Power Act Amendments*, 36 Envtl. L. 811 (2006); and *Judicial Review of INS Adjudication: When May the Agency Make Sudden Changes in Policy and Apply its Decisions Retroactively?*, 52 Admin. L. Rev. 219 (2000).

## SPECIFIC EXPERIENCE IN ATTORNEY FEE MATTERS

14.     As a practicing environmental lawyer who has worked for judges, large law firms,

public interest organizations, and as a solo practitioner, I am familiar with the amount of time

that is necessary to successfully prosecute environmental cases, with rates charged by

environmental lawyers, and with the market for services performed by attorneys with the level of

experience and expertise of the attorneys from Eubanks & Associates, LLC, and its predecessor

firm Meyer Glitzenstein & Eubanks LLP, who represented plaintiffs in this case. This familiarity

stems from my having obtained court-awarded fees in environmental cases and engaging in

attorney fee litigation, obtaining fees through settlement, discussing fees with other attorneys,

studying published surveys of billing rates, and obtaining declarations regarding reasonableness

of time sought and prevailing market rates in cases where my clients have sought attorney fees

and other expenses. Through my legal experience in environmental cases, from my engagement

with the public interest environmental community (with both other attorneys and client

organizations), and from reviewing attorney fee awards in other cases, I am also familiar with the

complexity and difficulty of environmental litigation, and the specialized skills required to

successfully litigate such cases.

15.     My clients have obtained several awards of attorney fees for my work in the U.S.

District Courts for the Districts of Oregon and Nevada between 2008 and 2018, and I have

successfully settled cases involving claims for attorney fees in the District of Oregon, Eastern

District of California, and District of Nevada. This Court held that my rate of $315 per hour for

2009 was reasonable for an experienced environmental law practitioner in a FOIA case in *ONDA*

*v. Locke*, 2010 WL 56111, at *3 (D. Or. Jan. 5, 2010), and that my rate of $260 per hour for 2008

likewise was reasonable. *ONDA v. Ryan*, 2011 WL 937589, at *7 (D. Or. Mar. 16, 2011). On

reconsideration, the Court in *Ryan* awarded additional fees for reasonable work performed in 2010 and 2011, basing its award on rates of $325 per hour for 2010 and $335 per hour for 2011. *ONDA v. Ryan*, No. 08-576-BR, Opinion & Order at 7 (ECF No. 93) (D. Or. July 13, 2011). This Court in *ONDA v. Vilsack* awarded fees for my time based on these same rates and also deemed my rates of $350 per hour for 2012 and $365 per hour for 2013 to be reasonable for an environmental case venued in the Pendleton Division. *See ONDA v. Vilsack*, No. 07-1871-HA, Order (ECF No. 563) (D. Or. July 2, 2013). This Court in *Native Fish Society v. NMFS*, No. 12-431-HA, deemed my rates of $335 per hour in 2011, $350 per hour for 2012, $365 per hour for 2013, and $380 per hour for 2014 to be reasonable for the Portland market. *See Native Fish Society v. NMFS*, No. 12-431-HA, 2014 WL 7331039, at *3 (D. Or. Dec. 19, 2014). This Court in *McKenzie Flyfishers v. McIntosh* held that my rates of $355 per hour for 2013 and $365 per hour for 2014 were reasonable for work performed in the Eugene Division. *McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085, 1092–93 (D. Or. 2016). This Court in *ONDA v. BLM*, No. 08-1271-KI, deemed my rates of $350 per hour for 2012, $365 per hour for 2013, $400 per hour for 2015, and $420 per hour for 2016 to be reasonable. *ONDA v. BLM*, 223 F. Supp. 3d 1147, 1154–55 (D. Or. Dec. 21, 2016). The District Court for the District of Nevada deemed my rates of $350 per hour for 2012, $365 for 2013, $380 for 2014, $400 for 2015, $410 for 2016, and $420 for 2017 to be reasonable for that forum. *Bundorf v. Jewell*, No. 2:13-cv-00616-MMD-PAL, 2018 WL 3972145, at *3 n.2 (D. Nev. Aug. 20, 2018).

16.    I have also served as a consulting attorney and provided declaration testimony many times on attorney fee recovery matters. For example, in 2014, I served as one of declarants in support of the motion for attorney fees and other expenses in *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. U.S Forest Service*, in this Court, an

environmental public interest case that involved the impact of pesticides on National Forest Lands. *League of Wilderness Defenders/Blue Mountains Biodiversity Proj. v. U.S. Forest Service*, No.3:10-cv-01397-SI, 2014 WL 3546858, at *13 (D. Or. July 15, 2014) ("*LOWD*"). The Court cited and relied upon my declaration for the Court's conclusion that the case required specialized skill in environmental litigation which was not available elsewhere, and that the plaintiffs were entitled to recover for their attorneys' time at enhanced, market rates under the Equal Access to Justice Act ("EAJA"). *LOWD*, 2014 WL 3546858, at *13. The Court also relied on my declaration in holding that, given the plaintiffs' attorneys' highly specialized skills and years of experience, and the specialized practice area, the plaintiffs' attorneys' requested hourly rates were reasonable. *Id.* at *14–15. The Court also relied on my declaration in finding that the student law clerk rate of $125 per hour sought was reasonable. *Id.* at *15. The Court also awarded the plaintiffs fees for my time and that of their other declarants, and found that my rate of $380 per hour was reasonable for an attorney of my experience in 2014. *See id.* at *10, *16.

17.     I have also served as a consulting attorney and provided declaration testimony on behalf of a plaintiff seeking to recover attorney fees under EAJA in *Gifford Pinchot Task Force v. U.S. Forest Service*, No. 3:13-cv-00810-HZ (D. Or. filed May 13, 2013). I served as a consultant and provided testimony on behalf of a plaintiff seeking to recover attorney fees under the FOIA in *Columbia Riverkeeper v. U.S. Army Corps of Engineers*, No. 3:13−cv−01494−PK (D. Or. filed Aug. 26, 2013). In that case, this Court recognized my declaration as the "most detailed and well-reasoned" of the three submitted and awarded fees for my work at a rate of $400 per hour in 2015. Opinion and Order at 11, *Columbia Riverkeeper* (D. Or. Slip Op. May 5, 2015). I also served as a consultant and provided declaration testimony on attorney fees in *O'Connor v. County of Clackamas*, in which the Court awarded my reasonable hourly rate of

$420 per hour in Portland for 2016. Opinion and Order 12, *O'Connor v. County of Clackamas*, No. 11-1297-SI (D. Or. May 31, 2016) (ECF No. 199); *see* Declaration of David H. Becker ¶ 1 & Ex. 1, *O'Connor v. County of Clackamas*, No. 11-1297-SI (D. Or. filed Mar. 18, 2016) (ECF No. 172) (listing the $420 per hour rate and hours spent on that case for 2016).

18.     I also served as a consulting attorney and provided declaration testimony on attorney fees in *Center for Food Safety v. Vilsack*, No. 15-1690 (N.D. Cal. filed Apr. 14, 2015), for which I received compensation at my reasonable hourly rate for 2016 of $585 per hour in San Francisco.

19.     I also served as a consulting attorney and provided declaration testimony on attorney fees in *Alliance for the Wild Rockies v. Krueger*, No. 14-35069 (9th Cir. filed Jan. 31, 2014); *Alliance for the Wild Rockies v. U.S. Army Corps of Engineers*, No. 3:16-cv-01407-HZ (D. Or. filed July 11, 2016); *League of Wilderness Defenders/Blue Mountains Biodiversity Proj. v. Turner*, No. 2:16-CV-01648-MO (D. Or. filed Aug. 15, 2016); and *Greenpeace, Inc. v. Stewart*, No. 17-35945 (9th Cir. filed Nov. 17, 2017).

20.     Most recently in this Court, I served as a consulting attorney and provided declaration testimony on attorney fees in the appeal of *Alliance for the Wild Rockies v. U.S. Army Corps of Engineers*, 736 Fed. App'x 160 (9th Cir. 2018). On remand after a successful appeal, this Court awarded compensation for my work at my reasonable hourly rate for 2018 of $465 per hour in Portland. *See All. for the Wild Rockies, Inc. v. U.S. Army Corps of Eng'rs*, No. 3:16-CV-1407-HZ, 2019 WL 1749518, at *4 (D. Or. Apr. 18, 2019); Declaration of David H. Becker ¶ 2 & Attach. A, *All. for the Wild Rockies, Inc. v. U.S. Army Corps of Eng'rs*, No. 17-35668 (9th Cir. filed Oct. 26, 2018) (ECF No. 50-2) (listing the $465 per hour rate and hours spent on that case for 2018).

21.     During the last six months that I worked for Latham & Watkins LLP in Newark, New Jersey (from December 2004 until May 2005), my billing rate as a senior associate was $400 per hour. I retain many professional contacts among former colleagues from my large firm practice and law schools, and am aware of the rates and billing practices that large firms such as those I have worked at charge their private clients.

## REASONABLENESS OF HOURS REQUESTED AND EXCELLENCE OF RESULTS OBTAINED

22.     I have reviewed the following documents related to this litigation: the docket sheet through April 6, 2020, the plaintiffs' complaint, the plaintiffs' motion for preliminary injunction and related briefing, the Court's order granting the motion for preliminary injunction, the federal defendants' motion to stay and related briefing, the federal defendants' motion to dismiss and related briefing, the plaintiffs' motion to stay and related briefing, the federal defendants' motion to lift the stay and related briefing, and this Court's minute order and judgment dismissing the case.

23.     I have also reviewed the timesheets for the attorneys who worked on the case through April 17, 2020, as of which time the attorneys had spent approximately 540 hours on the case (including paralegal/law clerk time and attorney time billed at paralegal/law clerk rates), with the majority of the hours billed by Nick Lawton, William Eubanks, Elizabeth Lewis, and Katherine Meyer (who all worked together at Meyer, Glitzenstein, & Eubanks LLP when the case was filed, and the first three of whom continue to work for Eubanks & Associates, LLC). Some of the totals may be adjusted or reduced based on further exercise of billing judgment by the timekeepers prior to the filing of the application for attorney fees. I have also reviewed these attorneys' draft declarations and other materials describing their qualifications, experience, and expertise, along with the declarations by plaintiffs and/or plaintiffs' officers (some in draft form).

These attorneys' time entries do not show evidence of improper block billing, but rather list separate time entries for separate tasks performed or, in the case of entries that cover multiple tasks, by listing the time spent on each individual task—consistent with this Court's requirements.[1] *See LOWD*, 2014 WL 3546858, at *7. The time entries also satisfy the Ninth Circuit standard that a plaintiff's counsel meets their burden of adequately describing work performed "by simply listing [the] hours and 'identify[ing] the general subject matter of [the] time expenditures,'" and contain sufficient detail to allow for assessment of the reasonableness of time spent. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). I note also that they have also exercised billing judgment to "no charge" several items.

24.     In this case, plaintiffs achieved excellent results, namely an order from this Court preliminarily enjoining the BLM from proceeding with its planned wild horse sterilization experiments in 2018 based on the plaintiffs' likelihood of success on their First Amendment and claim related to the Wild Free-Roaming Horses and Burros Act and Administrative Procedure Act ("APA"), and also ultimately obtaining BLM's withdrawal of its 2018 experiments and the apparent withdrawal of new proposed sterilization experiments in 2019, after BLM urged the Court to dismiss the case as moot. The excellent results—everything that plaintiffs sought to achieve by filing this litigation in 2018—warrant recovery of a "fully compensatory fee" for the appellate stage of this litigation. *Hensley*, 461 U.S. at 435.

25.     The 2018 preliminary injunction makes plaintiffs "prevailing parties" for purposes of EAJA once this case was dismissed as moot. *Watson v. County of Riverside*, 300

---

[1] *Message from the Court Regarding Fee Petitions*, U.S. District Court for the District of Oregon, https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (last updated Mar. 2, 2017) (last visited Apr. 10, 2020).

F.3d 1092, 1096 (9th Cir. 2002); *League of Wilderness Defenders/Blue Mountains Biodiversity*

*Proj. v. Smith*, 491 F. Supp. 2d 980, 986 (D. Or. 2007) (holding that plaintiff was a prevailing

party when it obtained a preliminary injunction from this Court and the agency withdrew its

decision and moved to dismiss the case as moot). However, the additional litigation through

early 2020 that prevented BLM from trying the inhumane sterilization experiments again in 2019

was a further "excellent result" of the litigation warranting a fully compensatory fee recovery for

all of the time reasonably expended for the whole course of the litigation, irrespective of whether

the withdrawal of the 2019 proposal would separately give rise to prevailing party status.

26.     The hours sought by plaintiffs in this case are reasonable and consistent with fees

and expenses other federal courts have awarded in environmental matters and appeals with

which I am familiar. As a general matter, this Court has recognized that tasks involved in

reviewing factual evidence, researching applicable law, identifying and evaluating potential

claims, and developing and drafting a complaint "are tasks that rank among the most important

an attorney performs in any litigation" and time reasonably spent on these tasks is recoverable.

*LOWD*, 2014 WL 3546858, at *11 (quotation omitted); *ONRC Fund v. Goodman*, 05-cv-3004-

PA, 2008 WL 4000442, *3 & n.3 (D. Or. Aug. 25, 2008) (tasks such as "reviewing the

administrative record, researching the applicable law, identifying which claims [are] appropriate

to assert, and drafting the Complaint . . . rank among the most important an attorney performs in

any litigation"). Plaintiffs' expenditure of approximately 42 hours of pre-complaint time was

reasonable. For comparison, this Court has held that 150 hours (166.7 hours worked less a ten-

percent "haircut") was reasonable for researching and drafting the complaint in a civil rights suit.

*Prison Legal News v. Columbia Cty.*, No. 3:12–cv–00071–SI, 2014 WL 1225100, at *9 (D. Or.

Mar. 24, 2014). The plaintiffs' modest number of pre-complaint hours is likely attributable to

Declaration of David H. Becker – 13

having had to challenge a similar unlawful BLM decision regarding sterilization experiments in 2016 in *Kathrens v. Jewell*, No. 16-1650-SI (D. Or. filed Aug. 15, 2016), and therefore time spent on that case—which I understand amounts to about 175 hours—may have streamlined the preparation of the complaint in this one. To the extent that the work performed in 2016 was associated with the development of the theory of *this* case, it might be recoverable, but plaintiffs have chosen not to seek that time here. *See Webb v. Bd. of Educ.*, 471 U.S. 234, 243 (1985) (some "services performed before . . . the filing of a complaint are performed on the litigation," including not only "the drafting of the initial pleadings" but also "the work associated with the development of the theory of the case") (internal quotes omitted)

27.     The approximately 228 hours spent on briefing and securing the preliminary injunction that effectively protected the wild horses from undergoing sterilization experiments was also reasonable, and even perhaps modest for preparing briefing and evidence necessary to obtain an injunction. For comparison, this Court in *Prison Legal News* held that 295.02 hours (327.8 hours worked less a ten percent "haircut") was reasonable for litigating the preliminary injunction motion in that case. *Prison Legal News*, 2014 WL 1225100, at *10. As the preliminary injunction briefing ultimately constituted the sole briefing related to the merits of the claims in this case, another comparison would be this Court's full award for the 359.4 hours spent on the summary judgment phase alone in *ONDA v. Vilsack*—despite the fact that some of the issues had been at least partially briefed in two earlier preliminary injunction motions—as part of a full award for 4,265.7 hours of attorney time and 898.45 hours of law clerk/paralegal time, in a complex environmental case involving multiple federal agencies and claims under several statutes. *ONDA v. Vilsack*, No. 07-1871-HA, 2013 WL 3348428, at *5 (D. Or. July 2,

2013); *see* Second Dec. of Suzanne Taylor, *ONDA v. Tidwell*, No. 07-1871 HA, ¶ 7 (d)-(f) (Dkt
# 675) (calculating time spent on summary judgment alone).

28.    I also believe that the remaining time that plaintiffs' attorneys have spent since
this Court entered the preliminary injunction—approximately 185 hours, including time
opposing the motion to dismiss, briefing various stay motions, and attempting to settle the case,
as well as approximately 83 hours spent preparing an application for an EAJA award and motion
for reconsideration—was also reasonably spent and should be awarded under EAJA. It is my
experience that litigating cases involving underlying environmental issues and claims under
federal law, such as this one, is typically time-consuming and complex, even when the result
sought is straightforward as it was here, because of the often vexatious litigation tactics and
strategies that federal agencies engage in to avoid having a court rule on the merits of challenges
by environmental plaintiffs. I believe that the attorneys' time records, and the course of the
proceedings, justify the hours they expended for the entire course of litigation in this case and for
which they seek to recover fees.

29.    Based on my 15 years of litigating on behalf of environmental public interest
organizations, I am familiar with the strategy of federal agencies, and particularly the BLM, that
issue patently unlawful decisions—essentially daring aggrieved parties to file litigation—and
then, after plaintiffs and their attorneys have expended extensive time and scarce resources,
withdraw their decisions to avoid adjudication and attempt to (or actually) moot the plaintiffs'
challenges. Specifically, I was co-counsel in a case in which the BLM issued new grazing
decisions in December 2010 related to the Louse Canyon Geographic Management Area in
southeastern Oregon to attempt to moot out the challenges by the plaintiffs in that case to BLM's
March 2010 grazing decisions, a case in which the Ninth Circuit held that those plaintiffs'

Declaration of David H. Becker – 15

challenges were *not* moot, *Or. Natural Desert Ass'n v. Freeborn*, 458 F. App'x 605 (9th Cir.

2011), leading this Court ultimately to grant summary judgment to those plaintiffs. Am.

Judgment, *Or. Natural Desert Ass'n v. Freeborn*, No. 06-1311-MO (entered Sept. 10, 2012),

ECF No. 160. This experience reinforced in my mind the importance and necessity of continuing

to litigate until it is absolutely clear that an agency's unlawful decision cannot harm an

environmental plaintiff's interests and to take all measures necessary to try to obtain a judicial

order regarding the validity of agency action—particularly when the agency action is certain to

recur and previously withdrawn decisions are issued as new decisions with no or minor changes.

30.     It appears that BLM has attempted the same sort of shell-game in this case,

withdrawing its decision only after plaintiffs were forced to file and litigate a motion for

preliminary injunction—precisely the same strategy BLM employed in 2016 when the same

BLM District issued an EA and related decision approving sterilization experiments at BLM's

corrals in Hines, Oregon, after which plaintiffs were forced to file a preliminary injunction

motion, and BLM cancelled the 2016 experiments without briefing plaintiffs' motion. *Kathrens*

*v. Jewell*, No. 16-1650-SI. In this case, BLM's decision to undertake further experiments in 2018

using the riskiest and least humane of the procedures it studied in 2016, based on an inadequate

EA, was preliminarily enjoined by this Court.

31.     However, in light of the recurring pattern of unlawful decisions regarding

sterilization experiments issued by the BLM Burns District, it was eminently reasonable—

indeed, essential as part of zealous advocacy for their clients—for the plaintiffs in this case to

continue the litigation and attempt to obtain a judicial opinion on the merits of the BLM's

sterilization experiments by demonstrating that the case was not moot due to voluntary cessation

and because BLM's action was capable of repetition, yet would evade review without a decision

on the merits. Plaintiffs' arguments against mootness, and their further effort to stay proceedings, were reasonable in view of BLM's issuance of yet another draft EA for sterilization experiments in May 2019 with an intent to begin the experiments in August 2019. Three times in four years, BLM had begun processes to move forward with its unlawful sterilization experiments. BLM never formally withdrew the proposal for experiments contained in its May 2019 draft EA, and therefore it was reasonable for plaintiffs to assume, and continue to argue, that BLM could issue a final decision on that proposal, and that BLM was likely to do so, and that the Court therefore should retain jurisdiction and allow plaintiffs to file an amended complaint—without forcing the plaintiffs to file yet another lawsuit.

32.    Because of the BLM's established practice of issuing unlawful decisions only to later withdraw them under litigation pressure, and because the BLM Burns District had a pattern of stubbornly proposing the same or similar sterilization experiments, it was reasonable for plaintiffs' attorneys in this case to continue to litigate until the point that this Court dismissed the suit. Given the circumstances of this case and the earlier *Kathrens v. Jewell* case before this Court, plaintiffs' attorneys actions through this case were those that were necessary to advance and protect their clients' interests—and had the salutary effect of preventing BLM from attempting *again* to perform the sterilization experiments in 2019. Under the Ninth Circuit's standard of reasonableness, plaintiffs' attorneys are entitled to be compensated "for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). My review of the docket and key filings in this case reinforce my opinion that all of the attorney time sought by plaintiffs *was* reasonably expended by their attorneys to protect their interests. I note also that even the time spent in unsuccessful settlement

negotiations was reasonably spent and recoverable under EAJA. *Sorenson v. Concannon*, 161 F. Supp. 2d 1164, 1169 (D. Or. 2001).

33.     Although the U.S. Supreme Court has cautioned that "a request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, up to about 140–170 hours of total time to prepare the EAJA application for an award of costs, fees, and other expenses, the necessary supporting documentation, and a reply, together with the briefing on the motion for reconsideration, would be reasonable. In my experience, federal defendants invariably seek an enlargement of the number of pages for their response beyond the 10 pages allowed under the Local Rules, requiring a similarly overlength reply from plaintiffs. For comparison, this Court in *Native Fish Society* found that 183.2 hours of fees-on-fees time—104.6 hours to prepare a 10-page fee petition and extensive supporting materials, and 78.6 hours to prepare the 20-page reply in support of the fee petition (and additional supporting materials)—was reasonable, and awarded the full requested time for litigating attorney fees. *Native Fish Soc'y v. NMFS*, No. 12-431-HA, Opinion & Order (Dkt # 331); Second Dec. of David H. Becker, *Native Fish Soc'y v. NMFS*, No. 12-431-HA, Ex. B at 39–42 (Dkt # 306); Third Dec. of David H. Becker, *Native Fish Soc'y v. NMFS*, No. 12-431-HA, Ex. F at 1–6 (Dkt # 329).

34.     My review of the timesheets of the four principal timekeepers—Mr. Lawton, Mr. Eubanks, Ms. Lewis, and Ms. Meyer—indicate that they did not duplicate tasks, but rather divided up responsibilities for focusing on specific tasks over the course of the litigation. This was particularly true during the "all hands on deck" process of preparing the complaint and the preliminary injunction briefing—a period also during which Mr. Lawton, the lead counsel in the case, was forced to take time off because his mother passed away, and the other members of his firm pitched in to continue preparing for the successful injunction, which was entered three days

before the challenged experiments were originally scheduled to begin. In addition, by relying on the most junior attorneys for the vast majority of time expended during the last three years, plaintiffs reduced the overall total of fees incurred in the case, representing a net benefit to the federal defendants. On the whole, the time expended was reasonable for a case of this importance, and the total fees are lower because of the attorneys' decisions about how to divide up the time spent on the various phases of the case.

35.    There do not appear to be any unnecessarily duplicative tasks in the attorneys' time records, and most of the tasks were performed independently or sequentially—in particular given the need to cover for Mr. Lawton's absence after his mother passed away during the preliminary injunction proceedings. I note how plaintiffs' attorneys divided up tasks to quickly file the case and motion to obtain the critical ruling in this case, the Court's preliminary injunction prohibiting the 2018 sterilization experiments. I am aware of how time consuming and labor-intensive securing a preliminary injunction against federal action can be, having sought such "extraordinary" relief in several cases myself, most recently in *Western Watersheds Project v. Bernhardt*, 392 F. Supp. 3d 1225 (D. Or. 2019). In reviewing the work of the attorneys in this case, it does not appear to me that the plaintiffs' attorneys engaged in *unnecessary* duplication, which is the Ninth Circuit's standard for deducting time. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

36.    In a case like this, the modest amount of time the lawyers spent conferring and reviewing and editing jointly-drafted briefs was important in ensuring their ultimate success. In my experience, discussions regarding strategy, legal theories, and mooting oral arguments by experienced attorneys are among the most productive and important aspects of successfully prosecuting complex federal environmental cases; and when two attorneys contribute

substantively to such discussions, it is appropriate (and common in private practice) for them to bill for both attorneys' time. It appears that the total amount of time spent by the attorneys in this case in conferencing and discussions was less than 30 hours, which is a reasonable amount of time given the circumstances that required temporary substitution for Mr. Lawton during the preliminary injunction proceedings, and the fact that BLM issued a new proposal while the case was pending. These and other events, including the motions to stay and to dismiss and the dismissal of the case, made strategizing among the attorneys essential—warranting a full recovery for their time. *See Bundorf v. Jewell*, 336 F. Supp. 3d 1248, 1255 (D. Nev. 2018) (68.9 hours spent by attorneys in conferencing and coordinating over the course of six years was not excessive, "perhaps conservative," and fully compensable); *see also Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) ("A moot court to prepare for argument in a case as important as this one is not unreasonable. Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort."). My experience at the private firms where I worked was that private firms would bill the time for both attorneys engaged in an important process—such as calls with clients or conferences among attorneys—that furthered the client's interest, and clients understood this to be reasonable. This is different from, for example, having multiple attorneys listening in on a conference call with a third party, in which case it would be appropriate not to charge the time of more than one attorney.

37.     This Court has previously recognized the value and efficiency that I bring to a "team" approach to litigation, and the same efficiencies are apparent in the timesheets of plaintiffs' attorneys in this case, who brought a similar team approach to successfully obtain an injunction against the challenged sterilization procedures and leanly staffing the subsequent litigation. In a case in which I was lead counsel, and my clients sought $1,371,893.96 for costs,

fees, and other expenses, this Court awarded substantially all of the amount requested, noting

that "the court does not believe that they spent too much time on this case." *Or. Natural Desert*

*Ass'n v. Vilsack*, No. 2:07-CV-01871, 2013 WL 3348428, at \*5 (D. Or. July 2, 2013). Then-

Chief Judge Haggerty explained that it was

> not a case where multiple senior partners at a high priced firm are driving up fees
> unnecessarily. This was an environmental case and justified the use of attorneys
> learned in environmental law. All in all, the fees are not particularly high given
> the size and duration of this case. *It is safe to say that if a large firm had handled
> this case, the fees would have been an order of magnitude larger*.

*Id.* (emphasis added); *see* Aug. 8, 2013 Order (No. 07-1871, ECF No. 687) (awarding

$1,250,907.78 of the $1,371,893.96 requested). The same is true of the plaintiffs' attorneys in

this case, who coordinated such that the bulk of the work was performed by more junior

experienced attorneys to reduce the overall costs, while having more senior attorneys perform

specific, narrow tasks to ensure the overall success. The total requested in this case is modest

compared to what a large, non-public-interest firm would have charged for the same litigation.

### THE RATES REQUESTED ARE REASONABLE FOR THE PORTLAND MARKET

38.     Plaintiffs seek the following rates for their attorneys:

|  | **2018** | **2019** | **2020** |
|---|---|---|---|
| **Lawton (JD 2013)** | **$320** | **$330** | **$385** |
| (Yrs Experience) | (5) | (6) | (7) |
| **Eubanks (JD 2007)** | **$370** | **$385** | **$430** |
| (Yrs Experience) | (11) | (12) | (13) |
| **Lewis (JD 2015)** | **$265** | **$325** | |
| (Yrs Experience) | (3) | (4) | |
| **Meyer (JD 1976)** | **$665** | **$675** | |
| (Yrs Experience) | (42) | (43) | |
| **Glitzenstein (JD 1981)** | **$655** | | |
| (Yrs Experience) | (37) | | |

39.     Based on my experience with attorney billing rates in Portland, my own

experience with attorney fee recovery described above, and my research on fee rulings issued by

this Court, it is my opinion that the hourly rate requested by Mr. Lawton, Mr. Eubanks, Ms.

Lewis, Ms. Meyer, and Mr. Glitzenstein are reasonable and reflect the rates customarily charged

in Portland for similar legal services by attorneys of the experience, reputation, and ability that

they have. As described below, all of these attorneys are highly-respected environmental public

interest litigators with recognized expertise in environmental matters.

40.     For rates beginning in 2016, this Court uses the 2017 OSB Survey[2] as its initial

benchmark for reasonable attorney rates and requires that fee petitions address the most recent

OSB Survey.[3] The 2017 OSB Survey (p. 12) reflects hourly billing rates in 2016.

41.     The practice of this Court is to assess reasonable market rates for successive years

after the Oregon State Bar Economic Surveys are issued by adjusting the rates reported in the

Survey—2016 rates in the 2017 OSB Survey—based on inflation, according to the U.S.

Department of Labor's consumer price index for urban consumers ("CPI-U") in the Western

states of the United States. *See Currie v. Shaw*, 3:13-cv-01515-PK, 2014 WL 3514977, at *5–6

(D. Or. June 6, 2014) (adjusting the 2011 rates reported in the 2012 OSB Survey using CPI-U for

the Western states).

---

[2] Elliott, D. *et al*., *Oregon State Bar 2017 Economic Survey – Report of Findings*, Survey
Research Lab, Portland State University, Dec. 26, 2017,
https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf.

[3] *Message from the Court Regarding Fee Petitions*, U.S. District Court for the District of
Oregon, https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (last
updated Mar. 2, 2017) (last visited Apr. 10, 2020).

42.     The U.S. Department of Labor's Bureau of Labor Statistic's data for CPI-U in the Western states of the United States is available on the Bureau of Labor Statistics website.[4] This data shows the annual CPI-U for Western states as:

|      |         |
|------|---------|
| 2016 | 247.705 |
| 2017 | 254.738 |
| 2018 | 263.263 |
| 2019 | 270.530 |

43.     An estimate of the inflation-adjusted rates for 2020 can be obtained by dividing the most recent CPI-U data, through March 2020 (273.995), by the CPI-U through March 2019 (267.370), and multiplying that by the annual CPI-U for 2019.

44.     Using the rates from the 2017 OSB Survey, and adjusting the rates for 2016 reported in that survey for inflation through 2020 as described above, the reasonable mean, median, 75% percentile, and 95% percentile rates for attorneys in Portland who practice "Real Estate/Land Use/Environmental Law" for 2017 through 2020 are:

|              | Year | Mean     | Median   | 75%      | 95%      |
|--------------|------|----------|----------|----------|----------|
| OSB Survey # | 2016 | $398.00  | $390.00  | $475.00  | $610.00  |
| Adjusted #   | 2018 | $423.00  | $414.50  | $504.83  | $648.31  |
| Adjusted #   | 2019 | $434.38  | $425.65  | $518.42  | $665.77  |
| Adjusted #   | 2020 | $445.15  | $436.20  | $531.27  | $682.26  |

As this Court has noted, the OSB Survey does not encompass the "highly specialized practice of federal environmental litigation," but rather groups three categories of attorneys into one practice area. *See LOWD*, 2014 WL 3546858, at *15. In my experience, rates for attorneys who specialize in federal environmental litigation are likely to be at the very top of the range of the listed rates for "Real Estate/Land Use/Environmental Law" practitioners. This Court also recently explained

---

[4] Bureau of Labor Statistics, *CPI for All Urban Consumers (CPI-U) – West*, http://data.bls.gov/cgi-bin/surveymost?cu (last visited on Apr. 10, 2020).

that OSB Survey rates for a highly specialized practice area, up to the 95% percentile, rather than general rates according to years of experience, are the appropriate comparator for reasonable rates in cases involving litigation within that practice area. *SPF Brewery Blocks, LLC v. Art Inst. of Portland, LLC*, No. 3:18-cv-1749-MO, 2019 WL 1497029, at *2 (D. Or. Apr. 4, 2019) (awarding Portland private practice attorney with eighteen years of complex litigation experience an hourly rate of $490 for work performed through November 2018 and $525 for work performed thereafter, based on the OSB Survey rates for attorneys practicing business and corporate litigation).

45.    Attorneys who specialize in federal environmental litigation are also likely to be at the top of the listed ranges of rates by years of experience for all attorneys in Oregon, because the "Real Estate/Land Use/Environmental Law" practice area is one of the highest compensated in Oregon, as reflected in the OSB 2017 Economic Survey's charts of hourly billing rates by area of practice. These charts show that the median rates for attorneys in Portland range from $200 per hour (for Civil Litigation-Insurance Defense) to a high of $390 per hour for Real Estate/Land Use/Environmental Law. 2017 OSB Survey at 40–43. Real Estate/Land Use/Environmental Law practitioners also have the highest 25th percentile, mean, and 75th percentile rates among all of the specialized practice areas in the Survey, and have the second-highest 95th percentile rate (after Tax/Estate Planning practitioners). 2017 OSB Survey at 40–43. Given these data, it is likely that Real Estate/Land Use/Environmental Law practitioners would be at the top of each listed range of rates by years of experience, which encompasses attorneys from all practice areas. *See* 2017 OSB Survey at 38–40.

//

//

*__The Rates Sought by Mr. Lawton are Reasonable__*

46.    Mr. Lawton, who obtained his JD in 2013, seeks rates of $320 per hour for 2018, $335 per hour for 2019, and $385 per hour for 2020. These rates are reasonable market rates for an attorney of his experience and expertise in Portland.

47.    In 2018 and 2019, when Mr. Lawton had 5 and 6 years of experience respectively, the inflation-adjusted rates for lawyers with 4 to 6 years of experience in Portland, based on the 2017 OSBAR Survey, were:

| | Year | Mean | Median | 75% | 95% |
|---|---|---|---|---|---|
| OSB Survey # | 2016 | $249.00 | $250.00 | $300.00 | $350.00 |
| Adjusted # | 2018 | $264.64 | $265.70 | $318.84 | $371.98 |
| Adjusted # | 2019 | $271.76 | $272.85 | $327.43 | $382.00 |

48.    In 2020, when Mr. Lawton has 7 years of experience, the inflation-adjusted rates for lawyers with 7 to 9 years of experience in Portland, based on the 2017 OSBAR Survey, are:

| | Year | Mean | Median | 75% | 95% |
|---|---|---|---|---|---|
| OSB Survey # | 2016 | $282.00 | $280.00 | $340.00 | $400.00 |
| Adjusted # | 2020 | $315.41 | $313.17 | $380.28 | $447.39 |

49.    The rates Mr. Lawton seeks fall at approximately the 75% percentile for an attorney with of his experience in those years. He is seeking rates well below the mean inflation-adjusted rates for Real Estate/Land Use/Environmental Law attorneys in Portland, which ranged from $423.00 per hour in 2018 to $445.15 per hour in 2020. The rates he requests for 2018, 2019, and 2020 are reasonable for a lawyer with 5 to 7 years' experience in Portland with an expertise practicing exclusively environmental and natural resources law. This Court has held that rates at the 75th percentile are reasonable for attorneys with 4–6 and 7–9 years of experience and practice specializations and relevant experience in the areas of law at issue in the case.

*Arnold v. Pfizer, Inc.*, No. 3:10-cv-01025-AC, 2015 WL 4603326, at *2–3 (D. Or. July 29, 2015).

50.     Mr. Lawton possesses a practice specialty in federal environmental litigation, and his qualifications, experience, and expertise make the rates he is seeking—at or just above the 75% percentile—reasonable for the Portland market. He has practiced exclusively public interest environmental law during his career since obtaining his JD in 2013. He has a well-earned reputation as one of the most outstanding young environmental litigators in the national public interest community, as reflected by his being hired as a junior associate by one of the nation's preeminent public interest law firms, Meyer Glitzenstein & Eubanks LLP, and now as senior associate with its highly respected successor firm, Eubanks & Associates, LLC. He has successfully handled many cases as lead counsel, including several cases involving successful NEPA claims. I am currently co-counseling with Mr. Lawton in *Southern Utah Wilderness Alliance v. U.S. Department of the Interior* before the District Court for the District of Columbia, and have consulted with him on a variety of matters and reviewed briefing he has prepared in this and other cases. His exclusive practice of federal public interest environmental litigation gives him a practice specialization in this area, and the rates he seeks are eminently reasonable given his specialized knowledge of environmental litigation and his reputation based on his outstanding work so far in his career—which includes several successful federal environmental cases, including a special focus on litigating to protect wild horses on public lands.

### ***The Rates Sought by Mr. Eubanks are Reasonable***

51.     Mr. Eubanks, who obtained his JD in 2007, seeks rates of $370 per hour for 2018, $385 per hour for 2019, and $430 per hour for 2020. These rates are reasonable market rates for an attorney of his experience and expertise in Portland in light of his extensive and successful

environmental litigation practice and his position as owner and managing attorney of Eubanks &

Associates, LLC (and formerly partner at Meyer Glitzenstein & Eubanks LLP), which place him

among a small elite group of attorneys who practice environmental law and manage their firms.

52.    In 2018 and 2019, when Mr. Eubanks had 11 and 12 years of experience, the

inflation-adjusted rates for lawyers with 10 to 12 years of experience in Portland, based on the

2017 OSBAR Survey, were:

| | **Year** | **Mean** | **Median** | **75%** | **95%** |
|---|---|---|---|---|---|
| **OSB Survey #** | 2016 | $283.00 | $300.00 | $340.00 | $410.00 |
| **Adjusted #** | 2018 | $300.77 | $318.84 | $361.35 | $435.75 |
| **Adjusted #** | 2019 | $308.87 | $327.43 | $371.08 | $447.48 |

53.    In 2020, when Mr. Eubanks has 13 years of experience, the inflation-adjusted

rates for lawyers with 13 to 15 years of experience in Portland, based on the 2017 OSBAR

Survey, are:

| | **Year** | **Mean** | **Median** | **75%** | **95%** |
|---|---|---|---|---|---|
| **OSB Survey #** | 2016 | $288.00 | $300.00 | $375.00 | $460.00 |
| **Adjusted #** | 2020 | $322.12 | $335.54 | $419.42 | $514.49 |

The rates that Mr. Eubanks seeks are slightly above the 75% percentile inflation-adjusted rates

for attorneys with similar years of experience, and are between the mean hourly rate for lawyers

practicing Real Estate/Land Use/Environmental Law in Portland in 2019 ($433.33) and the 75%

percentile for such lawyers in 2019 ($517.17). These rates are reasonable Portland market rates

for an attorney of Mr. Eubanks's extraordinary experience, level of success in environmental

litigation, who has developed a national reputation for his litigation success, despite having

practiced for fewer than 15 years. I have known and consulted with Mr. Eubanks on legal issues

over the past ten years, and know him to be perhaps the preeminent environmental public interest

litigator in his experience cohort. This year is Mr. Eubanks's first full year as managing partner

at Eubanks & Associates. I well know how challenging it is to open a small law firm, having

done so myself ten years ago. His rates are, if anything, slightly below what a lawyer of his

expertise would command as manager of a nationally-known small boutique law firm.

### *The Rate Sought by Ms. Lewis is Reasonable*

54.     Ms. Lewis, who obtained her JD in 2015, seeks a rate of $265 per hour for 2018.

This rate is a reasonable market rate for an attorney with three years of experience and

specialized expertise in federal environmental litigation in Portland.

55.     In 2018, when Ms. Lewis had 3 years of experience respectively, the inflation-

adjusted rates for lawyers with zero to 3 years of experience in Portland, based on the 2017

OSBAR Survey, were:

| | Year | Mean | Median | 75% | 95% |
|---|---|---|---|---|---|
| OSB Survey # | 2016 | $236.00 | $235.00 | $250.00 | $305.00 |
| Adjusted # | 2018 | $250.82 | $249.76 | $265.70 | $324.16 |

The rate Ms. Lewis seeks for her work during 2018 is at the 75% percentile rate for Portland

lawyers with similar experience, and here three years of experience in 2018 placed her at the top

of the range of attorneys with up to three years of experience. This Court has held that a 75%

percentile rate is warranted for an attorney with three years of experience and a specialized

practice with relevant experience in the areas of law at issue in the case. *Arnold*, 2015 WL

4603326, at *3. Ms. Lewis has an unusually significant amount of experience and expertise in

federal environmental litigation for an attorney with only three years of practice, with almost

unprecedented experience (for a junior attorney) as lead counsel in several cases, including

several major litigation victories. Her outstanding experience, credentials, and training in

environmental law and litigation qualify her as a practice specialist in environmental litigation,

making the rate she seeks reasonable. She is seeking a rate well below the mean inflation-adjusted rate for Real Estate/Land Use/Environmental Law attorneys in Portland, which stood at $423.00 per hour in 2018.

### *The Rates Sought by Ms. Meyer and Mr. Glitzenstein are Reasonable*

56.     Ms. Meyer, who obtained her JD in 1976, seeks rates of $665 per hour for 2018 and $675 per hour for 2019. Mr. Glitzenstein, who obtained his JD in 1981, seeks a rate of $655 per hour for 2018. Ms. Meyer and Mr. Glitzenstein are two of the towering figures in the public interest environmental litigation community, with a combined eighty years of experience and an unparalleled track record of successful and precedent-setting environmental litigation. The rates sought are reasonable market rates for attorneys of their extraordinary experience and expertise in federal environmental litigation in Portland.

57.     Ms. Meyer and Mr. Glizenstein each had more than 30 years of experience in 2018 and 2019. The inflation-adjusted rates for lawyers with more than 30 years of experience in Portland, based on the 2017 OSBAR Survey, were:

|  | Year | Mean | Median | 75% | 95% |
|---|---|---|---|---|---|
| OSB Survey # | 2016 | $413.00 | $425.00 | $495.00 | $610.00 |
| Adjusted # | 2018 | $438.94 | $451.69 | $526.09 | $648.31 |
| Adjusted # | 2019 | $450.76 | $463.85 | $540.25 | $665.77 |

The rates Ms. Meyer and Mr. Glizenstein seek are reasonable for attorneys of their stature. Ms. Meyer currently serves as Director of the Harvard Law School Animal Law and Policy Clinic, and Mr. Glitzenstein is Director of Litigation at the Center for Biological Diversity, one of the world's premier environmental organizations dedicated to litigating for the protection of biodiversity. Ms. Meyer and Mr. Glitzenstein are at the very top of the market for environmental litigators, but are seeking rates below the inflation-adjusted 95% percentile rates for lawyers

practicing Real Estate/Land Use/Environmental Law in Portland, which ranged from $648.31 in 2018 to $665.77 in 2019, and also at the very top of the market for attorneys with 30+ years of experience.

58.    A few comparisons in the Portland market suffice to show the reasonableness of the rates Ms. Meyer and Mr. Glitzenstein seek. Jeffrey M. Edelson, an attorney with Markowitz Herbold PC who earned his JD in 1986, reported charging $575 per hour in 2018 (with 32 years of experience) and $650 per hour in 2019 (with 33 years of experience). *Llanes v. Zalewski*, No. 3:18-cv-267-SB, Declaration of Jeffrey M. Edelson in Support of Defendants' Petition for Attorneys Fees and Costs ¶ 12 (ECF No. 85). More recently, in late 2019, *The Oregonian* reported that the Oregon Secretary of State engaged the firm of Schwabe Williamson Wyatt to defend a lawsuit challenging the Secretary's decision to reject a series of ballot measures.[5] That story linked to the contract that Schwabe signed with the Secretary of State.[6] At page 17, the contract lists the rates that the Secretary of State agreed to pay the Schwabe attorneys, including $690 per hour for W. Michael Gillette (an attorney with 49 years of experience in 2019) and $320 per hour for Jessie Schuh (an attorney with 3 years of experience in 2019).

//

//

//

//

---

[5] *See* Rob Davis, *Secretary of State's attorney billing taxpayers $690 an hour in forest initiatives lawsuit*, THE OREGONIAN (Nov. 21, 2019), *available at* https://www.oregonlive.com/politics/2019/11/secretary-of-states-attorney-billing-taxpayers-690-an-hour-in-forest-initiatives-lawsuit.html (last visited Apr. 11, 2020).

[6] *Available at* https://assets.documentcloud.org/documents/6556898/Schwabe-Contract.pdf (last visited Apr. 11, 2020).

### *My Rate and Mr. Bahr's are Reasonable*

59.    The inflation-adjusted rates for lawyers with 21 to 30 years of experience in

Portland in 2020, based on the 2017 OSBAR Survey, are:

|  | Year | Mean | Median | 75% | 95% |
|---|---|---|---|---|---|
| OSB Survey # | 2016 | $394.00 | $415.00 | $475.00 | $525.00 |
| Adjusted # | 2020 | $440.67 | $464.16 | $531.27 | $587.19 |

60.    My reasonable rate for 2020, as an attorney with 21 years of experience, is $525

per hour, between the inflation-adjusted mean and 75% percentile for attorneys with 21 to 30

years of experience in Portland, and between the inflation-adjusted mean ($445.15 per hour) and

75% percentile ($531.27) for lawyers practicing Real Estate/Land Use/Environmental Law in

Portland. As noted in paragraph 20 above, this Court awarded my reasonable hourly rate for

2018 of $465 per hour as an attorney with 19 years of experience, and this year I moved into a

higher experience bracket under the 2017 OSBAR Survey. *See All. for the Wild Rockies*, 2019

WL 1749518, at *4.

61.    Mr. Bahr, who obtained his JD in 1990, seeks a rate of $555 per hour for 2020 as

an attorney with 30 years of experience. Mr. Bahr and I have co-counseled together on several

cases, and I know first-hand that he is one of the outstanding public interest environmental

lawyers in Oregon. I have been conferring with him about my cases, and relying on briefing and

precedents set in his litigation, since I became a public interest attorney in 2005. Mr. Bahr's

credentials, experience, and established expertise in public interest environmental litigation,

described in detail in his declaration, warrant rates at the very top of the ranges for attorneys with

21 to 30 years of experience and who practice Real Estate/Land Use/Environmental Law. The

rate he seeks is a reasonable market rate for an attorney with his level of experience and

specialized expertise in federal environmental litigation in Portland

**THE RATES SOUGHT SHOULD BE AWARDED AT THE REASONABLE MARKET RATES DESCRIBED ABOVE UNDER EAJA**

62.     I have known Ms. Meyer, Mr. Glitzenstein, and Mr. Bahr by reputation since 2005, when I began to practice public interest environmental law, and have known Mr. Bahr and Mr. Eubanks personally for the last ten years. I have known Mr. Lawton by reputation for the last four years, and began working directly with him in 2019. I know Ms. Lewis only by reputation, but her reputation and qualifications are outstanding for a junior attorney practicing public interest environmental law. All of these attorneys have outstanding reputations in the public interest environmental community for their knowledge and skills as environmental litigators and their ability to handle complex environmental cases, including cases involving NEPA. I have read opinions favorable to environmental plaintiffs in cases in which they have represented successful litigants, and have relied on those favorable decisions in briefing my own cases. Over my 15 years of practicing public interest environmental law, I have consulted with Mr. Lawton, Mr. Eubanks, and Mr. Bahr on discrete legal questions that have helped me do a better job of representing my own clients.

63.     Environmental litigation is a practice specialty justifying an upward adjustment in EAJA fees over the statutory cap. I believe that the plaintiffs' attorneys all possess the distinctive knowledge and skills necessary to claim a practice specialty in environmental litigation that warrants the rates they seek. These attorneys have a reputation in the national public interest environmental law bar as excellent litigators, with between 3 and 44 years of experience practicing exclusively or primarily federal public interest environmental litigation. They have experience in environmental law and litigation commensurate with the time they have been practicing, in particular in cases against the federal land management agencies involving the deleterious effects of major federal actions on our public lands. All of these attorneys possess

specialized knowledge and skill in the area of environmental law and litigation that was

necessary to achieve the excellent results obtained in this case—including Ms. Lewis, who, with

three years of experience, is the most junior, but who has been lead counsel in federal

environmental cases and practiced exclusively federal environmental law and litigation in her

career to date.

64.     There are only a handful of attorneys who know NEPA, the Wild Free-Roaming

Horses and Burros Act, and the APA exceptionally well and have the ability, and the

wherewithal, to pursue a case such as this on behalf of public interest plaintiffs. Mr. Lawton, Mr.

Eubanks, Ms. Lewis, Ms. Meyer, and Mr. Glitzenstein are among that small group, as is Mr.

Bahr. The attorneys at Eubanks & Associates, LLC (as well as Ms. Meyer and Mr. Glitzenstein)

are also uniquely expert in the law, facts, and science related to wild horse protection on federal

lands. This expertise and distinctive skills were necessary in this litigation, which challenged

BLM's decision to authorize sterilization experiments on wild horses, which this Court

preliminarily enjoined based, in part, on the likely showing that BLM violated the Wild Free-

Roaming Horses and Burros Act and the APA by failing to reconcile its decision with previous

factual findings in NEPA documents. Even the First Amendment claim, which the Court also

referenced in enjoining BLM's action, was filtered through the lens of plaintiffs' attorneys'

distinctive expertise and skills in environmental litigation and wild horse protection, which were

necessary to understand and then be able to frame the constitutional issue. None of the attorneys

seeking fees in this case would be available for the statutory EAJA rate. To the best of my

knowledge, based on having practiced environmental law for 21 years and in the Portland public

interest environmental law community for 15 years, there are no attorneys with the requisite

skills and expertise in environmental law available in Portland, or elsewhere in Oregon, at the statutory EAJA rate.

65.     Plaintiffs' attorneys are all highly respected for their commitment to public interest causes, both among public interest lawyers and among environmentalists nation-wide. In my experience practicing public interest environmental law, I know that cases of this type are risky, and many attorneys will not undertake them, because the chances for recovering attorneys' fees at fair market value can be slim, and any recovery may come long after the work is done. The work involved in such a case is both complex and time intensive. But it is also extremely important: in this case, plaintiffs attorneys' prevented BLM from unlawfully attempting sterilization experiments in 2018 and 2019, just as they had in 2016, and ultimately got BLM to give up its attempts to conduct these experiments, after the agency had multiple opportunities to correct the violations of NEPA and other laws in its proposals. The unpredictability and delay in recovering fees means that many attorneys simply will not or cannot afford to take these cases. The organizations and individuals who seek attorneys to undertake these kinds of cases often have little money, and have a hard time finding able and experienced attorneys such as the ones who represented the plaintiffs in this case. Consequently, these types of attorneys are in high demand, and their resources are often stretched thin. Attorneys such as plaintiffs' counsel, who represent citizens and citizens' groups in cases such as this perform an extremely valuable public service, which Congress has recognized and encouraged by authorizing awards of attorney fees to prevailing parties through the EAJA.

66.     This case presented complex factual and legal issues related to BLM's obligations in managing wild horses on federal land under the Wild Free-Roaming Horses and Burros Act, NEPA, and the APA. Because plaintiffs brought this case, and due to the efforts of its attorneys,

the plaintiffs achieved excellent results and protected wild horses. Their attorneys spent a reasonable amount of time on this case, and a fully compensatory fee award will vindicate Congress's intention under the EAJA to ensure that attorneys who assist citizens' groups in enforcing our nation's environmental laws obtain reasonable attorney fee awards.

67.     Despite their skill and the risk involved in such cases, the attorneys at Eubanks & Associates, LLC, as well as Ms. Meyer and Mr. Glitzenstein, focus their practices on representing citizens and citizens' groups in litigation related to environmental issues, limiting their practice and income in order to do so. These attorneys rely on fee recovery from successfully concluding such litigation and obtaining fees at fair market rates under the fee-shifting statutes. This is a particular concern and risk for a new law firm such as Eubanks & Associates, LLC, which—although staffed with attorneys who are among the best public interest environmental attorneys at their experience levels in the country—must still navigate the treacherous financial waters to which any new business is subject. I am personally very familiar with this process, having formed my own law firm, and both been successful in helping clients prevail and recover attorney fees, but also in unsuccessful litigation that has consumed several years but for which no attorney fees were recovered. Sometimes this risk pans out, often it does not. Because of the limited resources of environmental plaintiffs, these cases are often done on a contingent fee basis, with the only prospect of getting fair compensation for the work that was done being a full award of fees under the EAJA. Because these attorneys possess specialized knowledge and skills that were necessary to the success in this case, the plaintiffs should have an award of their full reasonable market rates above the EAJA statutory cap.

//

//

Declaration of David H. Becker – 35

**THE PARALEGAL/LAW CLERK RATE SOUGHT IS REASONABLE**

68.     Plaintiffs seek $175 per hour for 2018, 2019, and 2020 for work performed by paralegals and law clerks or for tasks performed by attorneys but reduced to paralegal rates by the attorneys at these small public interest law firms. This Court held in February 2019 that "a rate of $175 per hour is reasonable for law clerks and paralegals" for paralegal time expended in 2017 and 2018. *Goldingay v. Progressive Cas. Ins. Co.*, No. 3:17-CV-1491-SI, 2019 WL 852992, at *6 (D. Or. Feb. 22, 2019), and this rate is consistent with my knowledge of prevailing paralegal rates charged in the Portland market. This Court has also endorsed the practice of public interest attorneys—who often lack support staff—reducing their rates to paralegal or law clerk rates when undertaking paralegal tasks. *Native Fish Soc'y v. NMFS*, No. 12-431-HA, 2014 WL 7331039, at *3 (D. Or. Dec. 19, 2014). This includes tasks such as filing documents with the Court (a task ordinarily performed by a paralegal or specialized docket clerk at a larger firm) and preparing exhibits for legal filings (also ordinarily performed by a paralegal), as well as other tasks that are core paralegal and non-clerical work that are "sufficiently related to legal work" and not *purely* clerical tasks that cannot be recovered under EAJA. *Prison Legal News*, 2014 WL 1225100, at 9.

**THE COSTS AND OTHER EXPENSES SOUGHT ARE REASONABLE**

69.     I note also that, as of April 1, 2020, plaintiffs seek $3,882.97 for copying, postage, filing fees, and other recoverable costs and expenses, including fees for travel and legal research, which were necessary to the preparation of the plaintiffs' case and which, in my experience, are ordinarily billed to private clients. I have reviewed the itemized list of these costs and other expenses, and it is my opinion that they are reasonable and recoverable under EAJA.

//

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of April 2020 in Portland, Oregon.

_____
David H. Becker (OSB # 081507)
Law Office of David H. Becker, LLC
4110 SE Hawthorne Blvd. # 168
Portland, OR 97214
(503) 388-9160
davebeckerlaw@gmail.com

# ATTACHMENT A

**Kathrens v. Bernhardt - 18-1691 - David Becker (JD 1999)**         (through 4-15-20)

| Date | Description | Hours Spent | Hours Req'd | Rate | Amount Incurred | Amount Charged |
|---|---|---|---|---|---|---|
| 3/27/2020 | review and respond to N Lawton emails re: seeking fees in case where court ruled without briefing that no fees would be awarded with recommendations and model fee briefing | 0.2 | 0.2 | $ 525.00 | $ 105.00 | $ 105.00 |
| 4/1/2020 | review and respond to N Lawton, B Eubanks emails re: fee declaration with information about forum fees and recommendations | 0.3 | 0.3 | $ 525.00 | $ 157.50 | $ 157.50 |
| 4/1/2020 | review B Eubanks email re: case background, related information for review of case documents and fee motion materials | 0.3 | 0.3 | $ 525.00 | $ 157.50 | $ 157.50 |
| 4/6/2020 | review docket sheet, briefing, court opinions | 2.8 | 2.8 | $ 525.00 | $ 1,470.00 | $ 1,470.00 |
| 4/6/2020 | notes on issues to address in fee declaration | 0.3 | 0.3 | $ 525.00 | $ 157.50 | $ 157.50 |
| 4/6/2020 | draft fee declaration | 0.8 | 0.8 | $ 525.00 | $ 420.00 | $ 420.00 |
| 4/7/2020 | review timesheets and qualifications of counsel | 0.8 | 0.8 | $ 525.00 | $ 420.00 | $ 420.00 |
| 4/7/2020 | draft fee declaration | 2.5 | 2.5 | $ 525.00 | $ 1,312.50 | $ 1,312.50 |
| 4/7/2020 | edits and updates to fee declaration | 0.5 | 0.5 | $ 525.00 | $ 262.50 | $ 262.50 |
| 4/7/2020 | email to B Eubanks, N Lawton re: fee declaration | 0.2 | 0.2 | $ 525.00 | $ 105.00 | $ 105.00 |
| 4/7/2020 | review B Eubanks email re: Portland rates and respond with recommendation | 0.2 | 0.2 | $ 525.00 | $ 105.00 | $ 105.00 |
| 4/7/2020 | review B Eubanks additional email re: Portland rates v DC rates and respond with recommendation | 0.2 | 0.2 | $ 525.00 | $ 105.00 | $ 105.00 |
| 4/7/2020 | further edits to draft fee declaration | 0.4 | 0.4 | $ 525.00 | $ 210.00 | $ 210.00 |
| 4/8/2020 | review and respond to B Eubanks questions re: issues related to fee motion, specific treatment of different items, with recommendations | 0.8 | 0.8 | $ 525.00 | $ 420.00 | $ 420.00 |
| 4/8/2020 | review and respond to B Eubanks question re: recoverability of fees from 2016 case with recommendation | 0.2 | 0.2 | $ 525.00 | $ 105.00 | $ 105.00 |
| 4/8/2020 | legal research on new cases involving EAJA in D. Oregon, related legal issues | 0.6 | 0.6 | $ 525.00 | $ 315.00 | $ 315.00 |

**18-1691 Becker Declaration - Attachment A - Page 2 of 4**

| Date | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 4/8/2020 | review and respond to D Bahr, B Eubanks emails re: practice specialization, rates, other issues for fee motion and declarations | 0.4 | 0.4 | $ 525.00 | $ | 210.00 | $ | 210.00 |
| 4/8/2020 | review and respond to B Eubanks email re: declarations, fee petition review | 0.1 | 0.1 | $ 525.00 | $ | 52.50 | $ | 52.50 |
| 4/9/2020 | review and respond to B Eubanks questions re: fee declaration, fee motion | 0.3 | 0.3 | $ 525.00 | $ | 157.50 | $ | 157.50 |
| 4/10/2020 | draft fee decaration | 0.7 | 0.7 | $ 525.00 | $ | 367.50 | $ | 367.50 |
| 4/10/2020 | review N Lawton, B Eubanks, D Bahr emails re: reasonable rates, issues to focus on in fee petition and respond | 0.3 | 0.3 | $ 525.00 | $ | 157.50 | $ | 157.50 |
| 4/10/2020 | review D Bahr declaration | 0.3 | 0.0 | $ 525.00 | $ | 157.50 | $ | - |
| 4/11/2020 | prepare timesheet for time to today | 0.2 | 0.0 | $ 525.00 | $ | 105.00 | $ | - |
| 4/11/2020 | draft fee decaration and finalize | 1.8 | 1.8 | $ 525.00 | $ | 945.00 | $ | 945.00 |
| 4/11/2020 | review final declarations for Eubanks, Lewis, Meyer, and Glitzenstein | 0.3 | 0.3 | $ 525.00 | $ | 157.50 | $ | 157.50 |
| 4/11/2020 | email draft declaration to B Eubanks and N Lawton with recommendations | 0.2 | 0.2 | $ 525.00 | $ | 105.00 | $ | 105.00 |
| 4/11/2020 | review and respond to to B Eubanks question re: necessary evidentiary standards for proving eligibility with legal advice, examples, and recommendations | 0.8 | 0.8 | $ 525.00 | $ | 420.00 | $ | 420.00 |
| 4/11/2020 | email B Eubanks and N Lawton re: rate issues with recommendation and example | 0.1 | 0.1 | $ 525.00 | $ | 52.50 | $ | 52.50 |
| 4/12/2020 | emails w/B Eubanks, D Bahr re: reasonable rates | 0.3 | 0.3 | $ 525.00 | $ | 157.50 | $ | 157.50 |
| 4/12/2020 | research reasonable rates | 0.2 | 0.0 | $ 525.00 | $ | 105.00 | $ | - |
| 4/14/2020 | review D Bahr final declaration and updates | 0.1 | 0.1 | $ 525.00 | $ | 52.50 | $ | 52.50 |
| 4/15/2020 | review and respond to N Lawton email re: review of final drafts of declarations and motions | 0.1 | 0.1 | $ 525.00 | $ | 52.50 | $ | 52.50 |
| 4/15/2020 | review comments on draft Becker declaration and revise and finalize | 1.0 | 1.0 | $ 525.00 | $ | 525.00 | $ | 525.00 |
| 4/15/2020 | legal research on rates | 0.2 | 0.0 | $ 525.00 | $ | 105.00 | $ | - |
| 4/15/2020 | review and comment on draft Lawton declaration | 0.6 | 0.6 | $ 525.00 | $ | 315.00 | $ | 315.00 |
| 4/15/2020 | review client declarations and draft email memorandum to N Lawton, B Eubanks re: same | 0.4 | 0.4 | $ 525.00 | $ | 210.00 | $ | 210.00 |
| 4/15/2020 | review and comment on draft EAJA application | 1.2 | 1.2 | $ 525.00 | $ | 630.00 | $ | 630.00 |

| Date | Description | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/15/2020 | review and comment on draft motion for reconsiderations | 0.2 | 0.2 | $ 525.00 | $ | 105.00 | $ | 105.00 |
| 4/15/2020 | prepare revised timesheet for attachment to declaration | 0.2 | 0.0 | $ 525.00 | $ | 105.00 | $ | - |
| **Total:** | | **21.1** | **20.0** | | **$ 11,077.50** | | **$ 10,500.00** |
| | **Time Not Charged:** | **1.1** | | | | | |