William Nicholson Lawton, OSB 143685
nick@eubankslegal.com
William S. Eubanks II, admitted *pro hac vice*
bill@eubankslegal.com
Eubanks & Associates PLLC
1331 H Street NW, Suite 902
Washington, D.C. 20005
Tel: (202) 556-1243

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| GINGER KATHRENS, et al.,  )<br>                                                   )<br>            Plaintiffs,           )<br>                                                   )<br>      v.                                      )<br>                                                   )<br>DAVID BERNHARDT, et al.,  )<br>                                                   )<br>            Defendants.         ) | Case No. 3:18-cv-01691-MO<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR AMENDED APPLICATION FOR FEES, COSTS, AND OTHER EXPENSES UNDER THE EQUAL ACCESS TO JUSTICE ACT** |

i

**INTRODUCTION**

Plaintiffs' amended fee application explained that as prevailing parties who achieved excellent results, Plaintiffs are entitled to recover a fully compensatory fee. ECF No. 76. In response, Defendants fail to dispute Plaintiffs' excellent results—and many other important matters—and concede that Plaintiffs are entitled to an award under the Equal Access to Justice Act ("EAJA"). ECF No. 79. Yet, Defendants inappropriately ask the Court to ignore those excellent results, deviate from methodology established in binding authority, and reduce Plaintiffs' award by more than 75%.

**I.      Plaintiffs' Excellent Results Merit a Fully Compensatory Award**

"Where a plaintiff has obtained excellent results, [its] attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "The result is what matters." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1173 (9th Cir. 2019) (*en banc*). Here, Plaintiffs obtained excellent results enjoining the Bureau of Land Management's ("BLM") sterilization experiments, which led BLM to cancel them—i.e., the outcome Plaintiffs sought. Because Plaintiffs "accomplished their mission," they "achieved an excellent result." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001). Defendants do not dispute—and thereby concede—that Plaintiffs achieved excellent results. Instead, Defendants ignore this "most critical factor," *Hensley*, 461 U.S. at 435, in seeking to reduce Plaintiffs' award by over 75%. Defendants' proposed reductions defy precedent.

First, Defendants flout precedent by seeking to reduce Plaintiffs' award by 25% because the Court never reached one of Plaintiffs' claims. ECF No. 79 at 7. "[T]he court's rejection of or *failure to reach* certain grounds is not a sufficient reason for reducing a fee.'" *Ibrahim*, 912 F.3d at 1173 (quoting *Hensley*, 461 U.S. at 435). Such a reduction would be clear error. *Id.*

Likewise, Defendants disingenuously urge the Court to further reduce the award by 33% because Defendants "prevailed on one of the three claims actually litigated." ECF No. 79 at 8. However, while the Court did not issue an injunction based on Plaintiffs' claim that it was arbitrary

and capricious for BLM to conduct its experiments after Colorado State University ("CSU") withdrew from those experiments, the Court did find that this claim "raises serious questions going to the merits." ECF No. 21 at 58. The Court *never* rejected this claim; at most, the Court never reached its merits. Thus, this proposed reduction would be clear error. *Ibrahim*, 912 F.3d at 1173.

More generally, Defendants disregard the fact that Plaintiffs' claims are all inextricably related. "'[W]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.'" *Ibrahim*, 912 F.3d at 1174 (quoting *Hensley*, 461 U.S. at 440). Claims that "arose out of the same course of conduct," i.e. challenged the same government action, are related. *Id.*; *see also id.* at 1177–78. Plaintiffs' claims challenging BLM's experiments—including the claim regarding CSU—are all related, and "[f]ees for each of these claims are thus recoverable." *Id.* at 1177.

Finally, Defendants propose reducing many hours by 20% due to purported inefficiency despite Plaintiffs' prior experience challenging a similar BLM action in 2016. ECF No. 79 at 8. Defendants' attempt to penalize Plaintiffs for their prior success flouts precedent. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case[.]"). In fact, as Defendants fail to rebut with any evidence, Plaintiffs spent "far less time than would otherwise have been spent on this matter due to the development of nearly identical preliminary injunction briefing in the earlier case against BLM." Lawton Decl., ECF No. 76-1 ¶ 34; *see also* Becker Decl. ECF No. 76-7 ¶ 26 ("The plaintiffs' modest number of pre-complaint hours is likely attributable to having had to challenge a similar unlawful BLM decision regarding sterilization experiments in 2016"); *id.* ¶ 27 ("Time spent on injunction briefing "was also reasonable, and even perhaps modest").[1]

---

[1] The amount sought is especially reasonable because Plaintiffs do not seek compensation for "time related to the first lawsuit in which counsel initially developed the legal theories successfully applied

Thus, Defendants' arguments flout binding authority. Moreover, the Court has *already* substantially reduced Plaintiffs' recovery by declining to award fees for 145 hours, or roughly a third of the merits phase. ECF No. 76 at 10. There is no equitable basis for further reduction.[2]

## II.   Distinctive Expertise Was Necessary to Achieve Concededly Excellent Results

### A.   *Specialized Expertise in Environmental Law Was Necessary in this Case*

Enhanced hourly rates are proper when attorneys "hav[e] some distinctive knowledge or specialized skill needful to the litigation." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). Here, counsel's distinctive skills—particularly their extensive experience with environmental law generally and the Wild Free Roaming Horses and Burros Act ("WHA") specifically—were necessary to obtain Plaintiffs' excellent results. ECF No. 76 at 4–5. Notably, Defendants neither contest that Plaintiffs' counsel have distinctive skills, nor contend that attorneys with similar skills were available at EAJA rates, thus conceding these points. Instead, Defendants argue only that specialized skills "were not needed for the claims litigated in this case." ECF No. 79 at 3–4. This is incorrect.

Crucially, Plaintiffs submitted declarations attesting to the need for counsel's specialized expertise, including declarations from Plaintiffs, who are experienced litigants under the WHA, and from independent experts. *See* Kathrens Decl., ECF No. 76-10 ¶ 7 ("The specialized expertise of Plaintiffs' counsel was essential to the positive outcome in this litigation."); Roy Decl., ECF No. 76-6 ¶ 14 ("[I]t is my informed opinion that specialized experience of counsel regarding wild horses was essential to the results achieved in this litigation."); *id.* at ¶¶ 7–9, 14–16; Bahr Decl., ECF No. 76-3 ¶ 30 ("The hourly rates requested by Plaintiffs' attorneys in this matter are reasonable . . . [because

---

to this case." Lawton Decl. ¶ 34; *see also* Becker Decl. ¶ 26 (Time spent on the prior case "may have streamlined the preparation of the complaint in this one" and "might be recoverable, but plaintiffs have chosen not to seek that time here").

[2] At most, precedent allows a reduction of up to 10 percent—a "haircut"—based purely on the "exercise of discretion and without a more specific explanation." *Moreno*, 534 F.3d at 1112.

counsel's] skills and distinctive experience [were] brought to bear by the facts and issues of this case"); Becker Decl., ECF No. 76-7 ¶ 64 (Plaintiffs' counsel's "expertise and distinctive skills were necessary in this litigation, which challenged BLM's decision to authorize sterilization experiments on wild horses, which this Court preliminarily enjoined based, in part, on the likely showing that BLM violated the [WHA] and the APA by failing to reconcile its decisions with previous factual findings in NEPA documents."); *id.* (addressing Plaintiffs' First Amendment claim).

In stark contrast, Defendants offer *no evidence* to support their self-serving argument that specialized expertise was unnecessary; Defendants' only declaration is tellingly silent on this issue. *See generally* Poirier Decl., ECF No. 80. This omission is fatal. *See Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits.").

Moreover, even a cursory review shows that Plaintiffs' success in this case hinged on an extensive familiarity with the WHA. For example, expertise with the WHA was critical to Plaintiffs' successful First Amendment claim: Specialized understanding of the WHA's mandate that BLM establish an Advisory Board, 16 U.S.C. § 1337, and specialized knowledge of the particular role that Plaintiff Ginger Kathrens played as the Humane Advocate on that Board, enabled counsel to explain how Ms. Kathrens acted as a surrogate for the public in observing BLM's treatment of wild horses. ECF No. 7 at 16–17; ECF No. 14 at 5–8; Kathrens Decl., ECF No. 7-2 ¶¶ 7–16. This was key to Plaintiffs' success. *See* ECF No. 21 at 55 (finding likelihood of success because Kathrens "held a role much like the press at a capital punishment, as one standing in as proxy for the public, to inform the agency what the public might view about the humaneness of its proceedings").[3]

---

[3] Likewise, specialized understanding of the WHA's history allowed counsel to explain how public observation has previously empowered Plaintiffs to successfully drive changes in the implementation

4

Similarly, extensive knowledge of the WHA was necessary to Plaintiffs' successful claim that BLM arbitrarily and capriciously discarded its prior focus on its experiments' social acceptability. In evaluating this claim, the Court asked Plaintiffs' counsel a series of questions about the WHA's text and structure, and experience with the WHA enabled counsel to persuade the Court that "if [social acceptability is] not in the statute specifically by text, it's certainly implied in the structure of the statute." ECF No. 21 at 5–8. Likewise, the Court asked a series of questions about the agency's prior emphasis on social acceptability, as well as about the nature of the harm caused to Ms. Kathrens' ability to fulfill her role on BLM's Advisory Board, and expertise with the WHA allowed counsel to successfully answer those questions, *id.* at 8–12, and ultimately secure a preliminary injunction.

That counsel's distinctive skills were necessary here is also clear from the pivotal fact that Plaintiffs obtained excellent results in this case whereas other challenges to the same BLM experiments were *not* successful. *See* Kathrens Decl., ECF No. 76-10 ¶ 7 ("Although other lawsuits were filed by other organizations, they did not include the claims that were successful in this case. In my opinion, Plaintiffs were only able to bring these distinctive claims because of the specialized expertise of Plaintiffs' counsel."); Roy Decl., ECF No. 76-6 ¶ 14 (Plaintiffs "were able to bring these distinctive claims only because of the specialized expertise regarding the environmental and related laws governing the management of wild horses brought to bear by the counsel in this case."). Again, Defendants offer *no evidence* to rebut this showing.

Finally, the self-serving claim that environmental expertise was unnecessary is belied by the government assigning this case to a "Specialist[] in Litigation under Federal Fish and Wildlife Statutes" from the Department of Justice's Wildlife and Marine Resources Section. *See* U.S. Dep't of Justice, *Wildlife and Marine Resources Section*, https://www.justice.gov/enrd/wildlife-and-marine-

---

of the WHA, another important showing under the First Amendment. ECF No. 7 at 15–17; Kathrens Decl., ECF No. 7-2 ¶ 22; Roy Decl., ECF No. 7-4 ¶¶ 7, 17

resources-section. Moreover, the government's injunction briefing extensively discussed the WHA, BLM's management of wild horses, and whether BLM has a history of analyzing social acceptability. *See* ECF No. 13 at 1–3, 5–12, 25–26. Thus, Defendants' litigation conduct reveals that the government actually considered environmental expertise necessary to this case.

### B. *Plaintiffs' Hourly Rates Are Reasonable*

Against this backdrop, the rates Plaintiffs seek are reasonable for Portland, as demonstrated by abundant evidence and expert declarations. Becker Decl., ECF No. 76-7, at 38–68; Bahr Decl., ECF No. 76-3 at 13–30. Defendants neither rebut this detailed evidence nor provide any expert declaration of their own. *See League of Wilderness Defs./Blue Mountains Biodiversity Proj. v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2014 WL 3546858, at *15 (D. Or. July 15, 2014) (government failed "to meet its burden in objecting" to an hourly rate where it offered no evidence that the rate was unreasonable, "whereas [the plaintiff] submitted expert declarations attesting to the reasonableness of the hourly rate"); *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) ("defendants failed to meet their burden of rebuttal by submitting evidence to challenge the assertion of plaintiffs' counsel.").[4]

Defendants' proposal to reduce Plaintiffs' hourly rates to average rates described in the Oregon State Bar ("OSB") Survey disregards important points in Plaintiffs' unrebutted expert declarations. Critically, the rates Defendants describe, ECF No. 79 at 6, date from *2016* and have not been adjusted for inflation, contrary to general practice in this forum. *See Currie v. Shaw*, No. 3:13-CV-01515-PK, 2014 WL 3514977, at *5 (D. Or. July 14, 2014) (describing "[a]n appropriate method for adjusting . . . for inflation"); *SPF Brewery Blocks, LLC v. Art Inst. of Portland*, No. 3:18-cv-1749-MO, 2019 WL 1497029, at *2 (D. Or. Apr. 4, 2019) (approving "reasonable annual increases from the rates provided in the OSB Survey, which was conducted in 2017"). Plaintiffs' expert

---

[4] That Plaintiffs seek Portland rates rather than higher rates from their home fora reinforces the reasonableness of Plaintiffs' fee application. Lawton Decl., ECF No. 76-1 ¶ 8.

declarations extensively discuss the OSB Survey and identify the relevant, inflation-adjusted rates. Becker Decl., ECF No. 76-7 ¶¶ 47–61. Moreover, Plaintiffs' unrebutted expert evidence explains that the rates Plaintiffs seek are roughly at the 75% percentile rate by years of experience. *Id.* ¶ 49 ("The rates Mr. Lawton seeks fall at approximately the 75% percentile for an attorney with [] his experience"); *id.* ¶ 53 (Mr. Eubanks' rates "are slightly above the 75% percentile inflation-adjusted rates for attorneys with similar years of experience"); *id.* ¶ 55 (Ms. Lewis's rates are "at the 75% percentile rate"). Plaintiffs could have sought higher rates at the 95% percentile rate based on their environmental litigation skills. *See SPF Brewery Blocks,* 2019 WL 1497029, at *2 (awarding 95% percentile rates for counsel experienced in commercial litigation); Becker Decl., ECF No. 76-7 ¶ 44. Instead, Plaintiffs seek rates consistent with the 75% percentile rate by years of experience, adjusted for inflation. Notably, while failing to account for inflation, Defendants concede that the 75% rate by years of experience is appropriate. ECF No. 79 at 7. Thus, Defendants effectively acknowledge that, when adjusted for inflation, Plaintiffs seek reasonable rates in the Portland market.[5]

### III.     Plaintiffs Are Entitled to Recover For Time Spent in Fee Litigation

Defendants provide no principled reason for the Court to deny Plaintiffs compensation for time spent in fee litigation. Contrary to Defendants' suggestion, the Court's August 4, 2020 Order, ECF No. 75, did not clearly state whether the Court would award fees for time spent on fee litigation. Plaintiffs reasonably understood the Court's August 4 Order to relate to the case's merits phase, not to the fee phase, especially because the briefing leading to the August 4 Order did *not* address whether the award should cover the fee phase. ECF No. 76 at 6.

---

[5] Where Plaintiffs seek rates higher than the inflation-adjusted 75% rate, as for Ms. Meyer and Mr. Glitzenstein, Plaintiffs' expert has amply described—and Defendants have not rebutted—why those attorneys' "extraordinary experience and expertise" merit a higher rate. Becker Decl., ECF No. 76-7 ¶¶ 56–61; Bahr Decl., ECF No. 76-3 ¶¶ 27–28. Moreover, Defendants do not contest the rates for Mr. Becker and Mr. Bahr, which are roughly at the 75% percentile rate for attorneys of their years of experience. *See* Becker Decl., ECF No. 76-7 ¶¶ 59–61.

Plaintiffs also reasonably construed this Court's August 4 Order as consistent with binding precedent—whereas Defendants' interpretation directly contradicts it. "[U]nder the EAJA, the prevailing party is **automatically** *entitled to attorney's fees for any fee litigation* once the district court has made a determination that the government's position lacks substantial justification." *Love v. Reilly*, 924 F.2d 1492, 1497 (9th Cir. 1991) (emphasis added); *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (Courts "have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable. This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee."). Plaintiffs reasonably construed the August 4 Order as silent on, and thus leaving open, the question of compensation for the fee phase.

Moreover, Plaintiffs provided a detailed explanation of why all the time spent litigating over fees has been necessary to secure entitlement to any fees whatsoever and was entirely reasonable under the circumstances. ECF No. 76 at 6–9. Defendants do not contest these justifications. As such, Defendants effectively concede that all of the time Plaintiffs have spent on fee litigation has been reasonable—and necessary to secure any fees at all.

Defendants offer only the meritless argument that compensation for time spent on fee litigation would purportedly be inequitable. However, as Plaintiffs explained, equity strongly favors a fully compensatory award here, because this case represents the second time Plaintiffs have had to challenge the same unlawful conduct by BLM and because they remain concerned that they will not be able to afford to litigate these same issues again if they cannot obtain a truly compensatory award. ECF No. 74 at 14–16 (explaining that this concern is realistic because BLM recently authorized similar conduct as that challenged in this case); ECF No. 76 at 10. Likewise, Plaintiffs explained that Congress enacted EAJA precisely to ensure that litigants like Plaintiffs will not be "deterred from seeking review of . . . unreasonable governmental action because of the expense involved in securing

the vindication of their rights." Congressional Findings and Purposes, note following 5 U.S.C. § 504. Defendants make no effort to rebut Plaintiffs' arguments based in equity and EAJA's fundamental purpose. Likewise, Defendants ignore Plaintiffs' explanation that—notwithstanding the need to prepare *more briefs* than normal in fee litigation—Plaintiffs spent *less time* than this Court has previously approved as reasonable. ECF No. 76 at 9. Because Defendants provide no persuasive reason for departing from the default rule of compensating plaintiffs for time spent in fee litigation, the Court should issue an award that fully compensates Plaintiffs for the time spent litigating fees.[6]

### IV.     <u>Defendants' Further Reductions Lack Merit</u>

Defendants' proposed reduction of 20% for time spent on conferencing due to ostensible overstaffing defies law and ignores facts. *See Moreno*, 534 at 1114 ("[T]he district court may not set the fee based on speculation as to how other firms would have staffed the case."); *Sorenson*, 239 F.3d at 1146 (noting reversal of a deduction of 10% for ostensible overstaffing). The staffing on this case was typical for preliminary injunctions and especially reasonable given that counsel needed to collaborate on preliminary injunction briefing while lead counsel was out of the office due to his mother's death. Lawton Decl., ECF No. 76-1 ¶ 5. Likewise, Plaintiffs' unrebutted expert declaration attests to the fact that counsel did not needlessly duplicate tasks, but sensibly divided tasks in a standard, systematic team approach. Becker Decl., ECF No. 76-7 ¶¶ 34–37.

Likewise, Defendants' claim of double-billing is without merit, as Defendants provide no basis to believe that conferences among counsel were in any way unnecessary. *See Moreno*, 534 F.3d

---

[6] Again, because all time spent in fee litigation was necessary to recover *any* fees and based on excellent results—none of which Defendants dispute—Plaintiffs do not support any reduction of time spent in the fee phase. ECF No. 76 at 6–9. However, if the Court is inclined to reduce Plaintiffs' award for the fee phase, such fees may be reduced only "to the extent that the applicant fails to prevail in such litigation." *Comm'r, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990). Plaintiffs prevailed in fee litigation as to time spent on the injunction, securing fees for roughly two-thirds of the time spent on the merits. Thus, the maximum permissible reduction would be a reduction of roughly one-third in fees for time spent in fee litigation. *See* Lawton Decl., ECF No. 81-1 ¶ 6.

9

at 1112. Instead, the collaborative approach among counsel was reasonable in this case. Becker Decl., ECF No. 76-7 ¶¶ 36–37. It was also reasonable and not duplicative for Plaintiffs to work with experts to carry their burden of supporting their fee application. *League of Wilderness Defs.*, 2014 WL 3546858, at *10 ("Submitting three expert affidavits to support [a] fee request is not excessive.").

Defendants also wrongly assert that some time entries are "vague" where they state that counsel researched case law or reviewed relevant documents. However, these entries are both clear and reasonably spent in the background review of the law and facts applicable to this case.

Defendants further defy precedent by "double counting" their proposed reductions. *Moreno*, 534 F.3d at 1115 ("double counting is impermissible"). For example, Defendants reduce Plaintiffs' hourly rates because the case ostensibly did not require specialized expertise, yet also reduce numerous time entries for failing efficiently utilize expertise derived from prior litigation in 2016. Likewise, Defendants claim Plaintiffs may not recover costs for legal research but also eliminate time entries for legal research. Defendants may not have it both ways. *Moreno*, 534 F.3d at 1115 ("[T]he district court must exercise extreme care in making such reductions to avoid double counting.").

Finally, Defendants fault Plaintiffs for obtaining pro hac vice admission for Mr. Eubanks. Consistent with best practices and our professional liability policy, our firm ordinarily staffs at least two attorneys in each case to ensure timely receipt of ECF notifications and timely filing of documents. Here, this practice was crucial, as the death of lead counsel's mother necessitated Mr. Eubanks filing critical documents, including the successful motion for a preliminary injunction.

## **CONCLUSION**

For these reasons, the Court should reject Defendants' proposed reductions and provide Plaintiffs a fully compensatory in the amount of $186,544.67.[7]

---

[7] This amount includes the amount sought in Plaintiffs' amended fee application plus additional hours spent since that application. Lawton Decl., ECF No. 81-1, ¶ 3.

        Respectfully submitted,

        */s/ William N. Lawton*
        William N. Lawton
        nick@eubankslegal.com
        Oregon Bar No. 143685

        William S. Eubanks II
        (*admitted* pro hac vice)
        bill@eubankslegal.com
        D.C. Bar No. 987036

        Eubanks & Associates LLC
        1331 H Street NW, Suite 902
        Washington, DC 20005
        (202) 556-1243

        Counsel for Plaintiffs