IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**GINGER KATHRENS, et al.**,

                Plaintiffs,                              No. 3:18-cv-01691-MO

                                                   OPINION AND ORDER
v.

**DAVID BERNHARDT, Secretary, U.S.**
**Department of the Interior, et al.**,

                Defendants.

**MOSMAN, J.**,

      This matter comes before me on Plaintiffs Ginger Kathrens, The Cloud Foundation, American Wild Horse Campaign, Animal Welfare Institute, and Carol Walker's Amended Motion for Fees Pursuant to the Equal Access to Justice Act ("EAJA") [ECF 76]. For the reasons stated below, I GRANT in part and DENY in part Plaintiffs' Motion.

## BACKGROUND

### I.    Case Background

      Plaintiffs brought this case against the Bureau of Land Management ("BLM") challenging its decision authorizing wild horse sterilization experiments in Hines, Oregon. On November 2, 2018, I granted a preliminary injunction, enjoining Defendants from undertaking the sterilization experiments until further order from the Court. [ECF 15]. Specifically, I ruled for Plaintiffs on their First Amendment claim and their APA claim that BLM's failure to explain

why it was not assessing the social acceptability of its procedures was arbitrary and capricious. Order of Prelim. Inj. [ECF 24].

Subsequently, the Interior Board of Land Appeals vacated the relevant BLM decision in its entirety. Defendants then filed a Motion to Dismiss for Lack of Jurisdiction [ECF 36] arguing that Plaintiffs' claims were moot. The proceedings were stayed while the relevant administrative processes took place. On March 19, 2020, I lifted the stay and granted Defendants' Motion to Dismiss. [ECF 62]. In the ensuing Judgment, I stated that there would be "no award of attorney fees, costs, or prevailing party fees to any party." [ECF 63]. Plaintiffs filed a Motion for Reconsideration [ECF 64] and Application for Fees Pursuant to EAJA [ECF 65] on April 17, 2020.

Defendants filed a Motion to Defer Briefing [ECF 67] on Plaintiffs' Application for Fees [ECF 65], which I granted. I ordered Plaintiffs to submit an amended motion for reconsideration containing all legal arguments necessary to decide the motion, but excluding references to fee amounts, calculations, or estimates. [ECF 71].

On August 4, 2020, I granted Plaintiffs' Amended Motion for Reconsideration of Judgment [ECF 72] and stated that I will award Plaintiffs fees and costs pursuant to EAJA for the litigation leading up to and including the preliminary injunction. [ECF 75]. I further specified that I will not grant EAJA fees for work in connection to litigation that followed the granting of the preliminary injunction. *Id.* On August 17, 2020, Plaintiffs filed an Amended Application for Fees Pursuant to EAJA [ECF 76].

Plaintiffs seek a total of $186,544.67. The amount is comprised of $183,145.15 in attorney fees and $3,399.52 in costs and expenses. Pursuant to my prior order, I have already

denied Plaintiffs the hours spent litigating between the entry of the preliminary injunction and dismissal of the case.

## II.     Legal Standard

Under EAJA, "a court shall award to a prevailing party" fees, costs, and other expenses "in any civil action . . . including proceedings for judicial review of agency action, brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Accordingly, to be entitled to an award under EAJA, a party must (1) prevail, (2) be eligible for an award, (3) submit a statement of amounts sought as well as an itemized account of time expended and rates charged, and (4) allege that the position of the United States was not substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 408 (2004).

## DISCUSSION

## I.     Entitlement to Attorney Fees

Pursuant to my earlier order stating that I would award Plaintiffs fees and costs pursuant to EAJA for the litigation leading up to and including the preliminary injunction, [ECF 75], I have, as Plaintiffs point out, necessarily made several predicate findings as to Plaintiffs' entitlement to fees under EAJA.

First, Plaintiffs meet the statutory prerequisites to be eligible for fees under EAJA. Second, Plaintiffs are a "prevailing party" for purposes of EAJA with respect to the preliminary injunction.[1] Finally, the Government's position was not substantially justified as to the issues

---

[1] However, as indicated by my previous order, Plaintiffs did not prevail on Defendants' Motion to Dismiss [ECF 36] and are thus not entitled to recover for time spent on merits litigation after the grant of the preliminary injunction.

raised in the preliminary injunction proceedings. Defendants do not contest these predicate findings.

## II.    Fee Amount

Once a litigant has met the conditions of eligibility under EAJA, the court must determine whether the requested fee amount is reasonable. *Blair v. Colvin*, 619 F. App'x 583, 585 (9th Cir. 2015). A baseline for a reasonable fee amount is the lodestar calculation: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

### A.    Reasonableness of Hourly Rate

Plaintiffs seek attorney fees at these rates: Mr. Lawton at $320 to $385/hour; Ms. Lewis at $265/hour; Mr. Eubanks at $370 to $430/hours; Ms. Meyer at $665 to $675/hour; Mr. Glitzenstein at $655/hour; and law clerk/paralegal work at $175/hour. Pls.' Am. Fee App. [ECF 76] at 5; Second William N. Lawton Decl. [ECF 76-1] at ⁋ 29.

EAJA sets a statutory maximum hourly rate of $125/hour, which the court may adjust for cost of living increases. 28 U.S.C. § 2412(d)(2)(A)(ii). For 2018, the adjusted statutory rate is $201.60; for 2019, $205.25; and for 2020, $206.77. *See Statutory Maximum Rates Under the Equal Access to Justice Act*, https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited Dec. 3, 2020) (citing 28 U.S.C. § 2412(d)(2)(A); *Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005); and 9th Cir. R. 39–1.6).

Nevertheless, a "special factor" may justify a higher fee. 28 U.S.C. § 2412(d)(2)(A)(ii). In the Ninth Circuit, a court may award a higher rate if (1) the attorney possesses "distinctive knowledge and skills developed through a practice specialty," (2) those skills are needed in the litigation, and (3) those skills are not available elsewhere at the statutory rate. *Love v. Reilly*, 924

F.2d 1492, 1496 (9th Cir. 1991). It is the plaintiff's burden to satisfy these elements. *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1161 (9th Cir. 2008).

Where higher rates are justified, a court looks to prevailing market rates to set reasonable hourly rates. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved. *Id.* Courts in this District rely on the most recent Oregon State Bar (OSB) Economic Survey as the "initial benchmark." *See Message from the Court Regarding Fee Petitions*, https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions (last updated Mar. 2, 2017). The most recent survey is for the year of 2017. Courts may also consider factors such as the quality of attorney's performance, the results obtained, the complexity of a case, and the special skill and experience of counsel. *League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-cv-01397-SI, 2014 WL 3546858, at *6 (D. Or. July 15, 2014) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553−54 (2010)).

### 1. Whether Plaintiffs Qualify for a Higher Rate

Plaintiffs argue that they meet the statutory criteria to qualify for a higher rate because of their attorneys' specialization in environmental law, which was needed in the litigation and was not available elsewhere at the statutory rate.

 "Environmental litigation is an identifiable practice specialty that requires distinctive knowledge." *Love*, 924 F.2d at 1496. Plaintiffs have adequately demonstrated—and Defendants do not argue otherwise—that the attorneys working on this case satisfy this first factor, as they

each possess distinctive knowledge and specialized skills allowing them to claim a practice specialty in environmental litigation. Defendants also do not dispute that Plaintiffs' special skills were not available elsewhere at the statutory rate, and I find Plaintiffs have met their burden on this point, too.

Defendants do dispute the second criteria, that Plaintiffs' specialization in environmental law was actually needed in this litigation. Defendants argue such specialization was not needed because the claims litigated "were limited to a constitutional claim and routine administrative law claims." Defs.' Opp'n [ECF 79] at 3−4. At the preliminary injunction stage, I ruled for Plaintiffs on their First Amendment claim and on their APA claim that BLM's failure to explain why it was not assessing the social acceptability of its procedures was arbitrary and capricious.

I find that Plaintiffs have provided sufficient evidence that their environmental litigation skills aided them in litigating these claims. Plaintiffs' attorneys' expertise as to environmental law and the Wild Free Roaming Horses and Burros Act ("WHA") aided them in obtaining their preliminary injunction. *See* Ginger Kathrens Decl. [ECF 76-10] at ₽ 7; Suzanne Roy Decl. [ECF 76-6] at ₽ 14; David Bahr Decl. [ECF 76-3] at ₽ 30; David Becker Decl. [ECF 76-7] at ₽ 64. For instance, Plaintiffs' specialized knowledge of the WHA provided key insight to their successful First Amendment claim. *See* Pls.' Reply [ECF 83] at 4. Further, Plaintiffs were tasked with deciphering and comparing environmental assessments to identify whether BLM adequately explained its positions. This is precisely the type of work that reasonably requires specialization in environmental law.

I find that Plaintiffs have satisfied the statutory criteria based on their distinctive knowledge and specialized skills in environmental ligation and are accordingly entitled to a higher rate under EAJA.

### 2. Reasonableness of Hourly Rate

Plaintiffs seek rates right around or slightly above the 2017 OSB Economic Survey's 75th Percentile Rates, adjusted for inflation. *See* Pls.' Am. Fee App. [ECF 76] at 5; Becker Decl. [ECF 76-7] at ¶ 38–61. Defendants argue that these rates are excessive and should be limited to the average rates, or at a maximum, the 75th percentile rates not adjusted for inflation. Defs.' Opp'n [ECF 79] at 6–7.

Plaintiffs justify their hourly rates based on the experience, skillset, and reputation of each attorney, and by the specialized nature of their practice area. In justifying a rate higher than the average rates, Plaintiffs argue that the OSB Economic Survey does not accurately reflect attorneys practicing public interest environmental litigation for two main reasons. First, the OSB Economic Survey's rates based on area of practice unfairly groups real estate, land use, and environmental law under one heading for its hourly rate data, and qualities of an environmental law practice justify higher rates than both real estate and land use practices. *See* Pls.' Am. Fee App. [ECF 76] at 5; Bahr Decl. [ECF 76-3] at ¶ 17–20. Second, Plaintiffs argue that public interest environmental litigation is a niche and relatively scarce skillset. *Id.*

I agree Plaintiffs should not be lumped in with real estate and land use practices, and I also agree there is some difference between public interest environmental attorneys and other environmental attorneys. But Plaintiffs' assertions of the scarcity of public interest environmental attorneys does not by itself serve to establish premium market rates if there is not also a relatively higher demand for that skillset. Both are needed to demonstrate market scarcity, but Plaintiffs have not offered evidence regarding market demand. For the same reason, that there are "very, very few" environmental attorneys doing public interest work as opposed to

working for either industry or in governmental agencies does not automatically entitle Plaintiffs to higher rates. Bahr Decl. [ECF 76-3] at ⁋ 20.

That said, each of Plaintiffs' five attorneys is seeking a rate either right at or somewhat in excess of the inflation-adjusted 75th percentile rates in the OSB Survey based on years of experience. *See* Becker Decl. [ECF 76-7] at ⁋ 38–61. Defendants argue for at most the 75th percentile but provide no reason why these rates should not be adjusted for inflation and, in fact, in arguing for the EAJA statutory base rate they agree it should be adjusted for inflation. Despite the lack of a true showing of economic scarcity, I do find these rates are reasonable considering each attorney's training, skills, experience, and inflation adjustment in the specialized practice area of environmental litigation.

**B.      Reasonableness of Number of Hours Spent**

The lodestar method multiplies the reasonable rate by the reasonable hours spent. Courts are instructed to exclude hours that are excessive, redundant, or otherwise unnecessary. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). It is Plaintiffs' burden to document the appropriate hours expended and to submit evidence in support of those hours worked. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). Defendants have the burden to submit evidence to challenge the accuracy and reasonableness of those hours. *Id.* at 1398.

By my calculations, Plaintiffs spent roughly 273 hours on litigation prior to the entry of the preliminary injunction and roughly 190 hours on attorney fees litigation. These numbers take into account various reductions made by Plaintiffs' pursuant to their billing discretion and professional judgment. Still, Defendants make several objections to the number of hours spent by Plaintiffs.

### 1. Defendants' Objection to Time Spent After the Issuance of the Injunction

Defendants argue that pursuant to the Court's Order on August 4, 2020 [ECF 75], Plaintiffs cannot recover fees for any of the work performed after the issuance of the preliminary injunction. Plaintiffs do not seek to recover for time spent litigating Defendants' Motion to Dismiss. Plaintiffs do, however, log roughly 190 hours on work pertaining to fee recovery, including for time spent preparing an EAJA fee petition and supporting documents, and time spent on the motion for reconsideration and supporting documents.

A prevailing party may recover for time spent on "fees on fees" work. *Comm'r, INS v. Jean*, 496 U.S. 154, 162 (1990). While my prior order did not specifically address recovery for Plaintiffs' work seeking fees, the case law is clear that Plaintiffs, as a prevailing party, may recover for reasonable time spent on such work. *See, e.g.*, *Love*, 924 F.2d at 1497 ("[U]nder the EAJA, the prevailing party is automatically entitled to attorney's fees for any fee litigation once the district court has made a determination that the government's position lacks substantial justification.").

I am satisfied that the time Plaintiffs spent litigating fee recovery was reasonable. And because, as Plaintiffs point out, their Motion for Reconsideration was a necessary step for them to recover fees under EAJA, Plaintiffs can recover for time spent on the reconsideration motions.

### 2. Defendants' Argument to Reduce Fee Award by 33% Based on Claim Lost in Preliminary Injunction

Plaintiffs prevailed on two out of three claims raised in their Motion for Preliminary Injunction. Defendants thus argue that Plaintiffs' fee award should be reduced by 33% for the claim on which they did not prevail.

Plaintiffs cite *Ibrahim v. U.S. Department of Homeland Security*, 912 F.3d 1147, 1173 (9th Cir. 2019), for the premise that a rejection of or failure to reach certain grounds is not a reason to reduce a fee. "The result is what matters." *Id.* (quoting *Hensley*, 461 U.S. at 435). I agree with Plaintiffs reliance on *Ibrahim* and thus reject Defendants' argument to reduce Plaintiffs' fees by 33%. More fundamentally, because I have already reduced Plaintiffs' fee award based on their loss on Defendants' Motion to Dismiss, I find it would be inappropriate double-cutting to further reduce their award based on their failure to prevail on one claim in their preliminary injunction motion.

### 3. Defendants' Argument to Reduce Time Billed Prior to and Including Complaint by 25%

Defendants also argue that Plaintiffs' hours should be reduced by 25% because one of their four claims, a claim under the National Environmental Policy Act ("NEPA"), was in their complaint but not litigated in the motion for preliminary injunction.

Plaintiffs again rely on *Ibrahim* to argue that it does not matter that they did not litigate their NEPA claim in the injunction motion. However, this situation is somewhat different in that Plaintiffs did not advance this claim in the aspect of litigation in which they achieved their winning result, the preliminary injunction. To reduce Plaintiffs' fee on this ground would not be the same type of inappropriate double-cutting I have already refused to engage in. Instead, I reject Defendants' argument for slightly different reasons.

Plaintiffs' NEPA claim arose from the same BLM decision as their other claims. Plaintiffs achieved the results they wanted in their preliminary injunction motion and thus should not be penalized for including this additional claim in their complaint. Further, Defendants have not shown that a 25% reduction to account for one quarter of Plaintiffs' claims alleged in their

Complaint would fairly capture the time and effort spent on that claim—whether it be too high or too low. For these reasons, I decline to reduce Plaintiffs' fees on this ground.

### 4. Defendants' Argument to Reduce Time Billed Prior to and Including Complaint by 20%

Defendants also argue that Plaintiffs' hours should be further reduced by 20%, because Plaintiffs admit that the present case was "essentially identical" to a prior case Plaintiffs litigated. Defs.' Opp'n [ECF 79] at 8. Because of these similarities, Defendants argue that Plaintiffs should have been able to work on the First Amendment issues "in a fraction of the time that they billed." *Id.*

But Defendants do not specifically address Plaintiffs' contention that they were actually *more* efficient because of their prior success on the related matter. Pls.' Reply [ECF 83] at 2. Plaintiffs have adequately shown this to be true and I accordingly decline to reduce Plaintiffs' time by 20%.

### 5. Defendants' Objections to Other Hours Billed

Defendants make several other objections to the hours billed, including for excessive conferencing, double-billing, vague and ambiguous time entries, Mr. Eubanks's pro hac vice motion, and time spent researching related cases. Defs.' Opp'n [ECF 79] at 8–9.

After reviewing the relevant time records, I reject Defendants' objections to double-billing, vague and ambiguous time entries, Mr. Eubanks's pro hac vice motion, and research of related cases. I do, however, find Defendants' objection to excessive conferencing worthy of more discussion. Staffing five attorneys on a case like this inevitably creates—without any ill will by the attorneys—excessive conferencing. Nor was this case complex enough to justify assigning five attorneys. And I agree with Defendants that the best way to address excessive

conferencing is to take a percent reduction of time billed that was devoted to conferencing. Kaitlyn Poirier Decl. [ECF 80] at ⸿ 14.

I accordingly apply a 20% reduction to the hours Plaintiffs' counsel spent communicating internally, a total of $2,968.19, calculated using the yellow and green highlighted cells in Table 4 in Ms. Poirier's Declaration [ECF 80-4] but with the hourly rates claimed by Plaintiffs. *See* Poirier Decl. [ECF 80] at ⸿ 14; Second Lawton Decl. [ECF 76-1] at ⸿ 38. This amount will be subtracted from the total fees claimed.

###    C.    Costs and Expenses

Finally, Plaintiffs seek $3,399.52 in costs and expenses. The costs and expenses are for copying, postage, filing fees, and other similar expenses. Defendants argue only $2,037 is compensable. Specifically, Defendants argue that the Westlaw legal research fees, Mr. Eubank's pro hac vice motion filing fee, a photocopying/printing charge from September 1, 2018, and an "Electronic Court records search system" charge should all be eliminated from the costs and expenses. Defs.' Opp'n [ECF 79] at 9–10.

After reviewing the relevant bills, I grant Defendants' objection to the 10/1/2018 bill for $4.08 associated with the "Electronic Court records search system." Second Lawton Decl. [ECF 76-1] Ex. D, at 85. I find all Plaintiffs' other costs and expenses to be reasonable.

//

//

//

//

//

//

## CONCLUSION

In sum, I GRANT in part and DENY in part Plaintiffs' Amended Motion for Fees Pursuant to EAJA [ECF 76]. I award Plaintiffs a total of $180,176.96 in attorney fees. In addition, I award $3,395.44 in costs and expenses, for a grand total award of $183,572.40.

IT IS SO ORDERED.

DATED this __4__ day of December, 2020.


*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge